785 P.2d 276

**Ismael G. GONZALES, Claimant–Appellant,**

v.

**LOVINGTON PUBLIC SCHOOLS and The New Mexico Public School Insurance Authority, Respondents–Appellees.**

**No. 11241.**

Court of Appeals of New Mexico.

Nov. 21, 1989.

Certiorari Denied Jan. 4, 1990.

Lowell Stout, Stout & Stout, Hobbs, for claimant-appellant.

Kevin M. Brown, Christopher W. Nickels, Beall, Pelton, O'Brien & Brown, Albuquerque, for respondents-appellees.

## OPINION

BIVINS, Chief Judge.

Worker appeals the part of the compensation order of the Workers' Compensation Division that reduces his benefits from temporary total disability to 10% permanent partial disability after December 20, 1989. Worker's sole contention on appeal is that the hearing officer did not have authority to determine partial disability before worker completed vocational rehabilitation, even though worker had failed to make a reasonable effort to rehabilitate himself. In resolving the issue, we examine the transient provisions of the Workmen's Compensation Act, NMSA 1978, §§ 52-1-1 through -69 (Orig.Pamp. & Cum. Supp.1986) (Interim Act), effective from May 21, 1986 through June 19, 1987. We affirm.

### Background

The unchallenged findings of fact made by the hearing officer reflect that worker, age thirty-five with a ninth-grade education, suffered an injury to his back on December 11, 1986, while working as a custodian for the Lovington Public Schools. At the time of the accidental injury, worker was earning $311.07 per week. From the date of the injury until October 24, 1988, worker was unable to perform his duties, which included cleaning and maintenance of the school buildings and grounds. During that period he was temporarily totally disabled. Worker reached maximum medical improvement on October 25, 1988, and was found to have a permanent partial disability of 10%.

The hearing officer also found that worker's background included employment as a farm laborer, tractor driver, and gasoline service station attendant. He found worker unable to return to his former job as a custodian and in need of vocational rehabilitation to restore him to suitable employment. The hearing officer found that worker could complete rehabilitation in one year. He also found worker was not making a reasonable effort toward rehabilitation. (The briefs seem to indicate worker never attempted the program recommended.) He found that, after vocational rehabilitation and taking into account the 10% partial disability, worker·"will be earning a comparable wage."

The compensation order provides that temporary total disability benefits continue from December 22, 1988, through December 20, 1989, after which benefits shall automatically decrease to the 10% permanent partial. Neither party challenges the award of temporary total disability benefits through December 20, 1989. It is from the reduction of compensation benefits after December 20, 1989, that worker appeals.

### Discussion

Worker contends that, once he reached maximum medical improvement, the hearing officer had no authority to postpone determination of permanent total disability. He also argues that his failure to attempt rehabilitation had no bearing, since Section 52-1-50 precludes forfeiture or diminution of any award on account of refusal to undertake rehabilitation. Worker states that it was incumbent on the hearing officer to award him permanent total disability, since he cannot return to his employment as a custodian and cannot earn comparable wages or salary. Employer would not be without a remedy, according to worker, since it has the right to seek termination or diminution of the award every six months. See § 52-1-56.

Employer counters, arguing that the hearing officer could consider the wages or salary worker would be able to earn after vocational rehabilitation, and properly exercised his discretion in setting a time limit for worker to complete rehabilitation. We agree.

This case brings into play the interaction between Sections 52-1-24, -25, and -26, and other provisions of the Interim Act

relating thereto. As we said in *Barela v. Midcon of N.M., Inc.*, 109 N.M. 360, 785 P.2d 271 (Ct.App.1989), the legislature, in enacting the Interim Act, was not concerned with detailed interrelationships between its provisions, the apparent purpose being to establish certain benchmarks and to leave to the courts the task of " 'rationalizing' the provisions of the statute." *Id.*, at 364, 785 P.2d at 275. We attempt to do that now in addressing the question before us.

Section 52–1–26 provides that temporary total disability benefits will be paid during the period a worker is unable, by reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of maximum medical improvement. Section 52–1–27 defines maximum medical improvement as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability." *See Baca v. Bueno Foods*, 108 N.M. 98, 766 P.2d 1332 (Ct.App.1988). Once maximum medical improvement has been achieved, a determination would ordinarily be made as to permanent disability, either total or partial, if worker has a permanent physical impairment.

Determinations of permanent disability are made by first deciding the extent of partial disability. If the injury is to a scheduled member, Section 52–1–43(B) applies. If the injury is to a body member or function not listed in subsection B, then subsection C of Section 52–1–43 refers the fact finder to the partial disability section of the Interim Act, Section 52–1–25. That would be the case here, since we are concerned with an injury to the back.

Permanent partial disability under Section 52–1–25 means a permanent physical impairment whereby a worker has an anatomic or functional abnormality existing after the date of maximum medical improvement, as determined by the American Medical Association's guidelines or comparable publications. Here the hearing officer made appropriate findings under that sec-

tion and determined worker has a 10% partial disability.

The next step is to determine if the worker is permanently totally disabled. Section 52–1–24 provides a worker is permanently totally disabled if he suffers a permanent physical impairment whereby he is "wholly unable to earn comparable wages or salary." Comparable wages or salary are determined by a formula. The hearing officer considers the benefits the worker is entitled to receive for his partial disability under Section 52–1–43 (either scheduled member or partial disability). Here that entitlement was calculated at 10%. The hearing officer then adds that benefit to what the worker is able to earn "after the date of maximum medical improvement *and vocational rehabilitation.*" § 52–1–24 (emphasis added). If the sum of those two amounts is comparable to the wage the worker was earning when injured, the worker is deemed to be able to earn comparable wages or salary, and is therefore not entitled to permanent total disability. If not comparable, worker is entitled to permanent total disability.

Up to this point, the several provisions of the Interim Act dovetail and achieve the legislative intent of providing for temporary total disability until maximum medical improvement is achieved and then providing for payment of scheduled member, permanent partial, or permanent total disability if the worker retains a permanent physical impairment. The problem arises with an ambiguous phrase contained in Section 52–1–24. We set forth that section and highlight the language in question.

A. As used in the Workmen's Compensation Act [Chapter 52, Article 1 NMSA 1978], "permanent total disability" means a permanent physical impairment to a workman resulting by reason of an accidental injury arising out of and in the course of employment whereby a workman is wholly unable to earn comparable wages or salary. In determining whether a workman is able to earn comparable wages and salary, the hearing officer shall consider the benefits the worker is entitled to receive under Section 52–1–43 NMSA 1978. If the bene-

fits to which the workman is entitled under Section 52–1–43 NMSA 1978 and the wage he is able to earn *after the date of maximum medical improvement and vocational rehabilitation as provided in this act* is comparable to the wage the worker was earning when he was injured, he shall be deemed to be able to earn comparable wages or salary. "Physical impairment" does not include impairment of function due solely to psychological or emotional conditions, including mental stress.

Section 52–1–24(A) (emphasis added).

The first question is whether the highlighted language means that determination of permanent total disability should be delayed until the worker not only achieves maximum medical improvement but also completes vocational rehabilitation. The difficulties encountered in reading this provision in that manner can be illustrated by considering three situations that could occur if, at the time the worker achieves maximum medical improvement, the worker is unable to earn comparable wages: (1) the worker is not a candidate for vocational rehabilitation; (2) the worker is a candidate but rehabilitation may be prolonged; or (3) as in the case before us, worker, although a candidate, refuses or fails to avail himself of rehabilitation.

One could hardly argue in the first instance that permanent total disability determination should be delayed. The answers for the second and third examples are less clear. Because the language in question relates only to *how* to make the comparable-wage calculation, and not to *when* the calculation should be made, we interpret the phrase "the wage he is able to earn after ... vocational rehabilitation" to mean the wages a worker could reasonably be expected to earn if he avails himself of rehabilitation. By interpreting the language in this manner, we give effect to the legislative intent. *See Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 741 P.2d 1374 (1987).

Worker argues that, even though he has achieved maximum medical improvement, his benefits should not be reduced "until it can be shown at some future date that he is in fact capable of earning a comparable wage." He contends it would be mere "speculation and conjecture" to presume that worker can be suitably retrained at some future date to earn a comparable wage. If we were to adopt this argument, a worker could force payment of total disability benefits by simply refusing to undertake vocational rehabilitation. We do not believe this is what the legislature intended. Of course, where a determination is made as to the ability to earn after maximum medical improvement and vocational rehabilitation, it must not be based on speculation or conjecture. *See Regenold v. Rutherford*, 101 N.M. 165, 679 P.2d 833 (Ct.App.1984) ("probable," as used with reference to future medical expense, is that which can reasonably and fairly convincingly be accepted as true, without being undeniably so). Worker has not shown why the testimony of the vocational rehabilitation specialist in this case was speculative. While it is true the assessment of worker's ability to earn was predicated on his completing his GED, there was no indication he could not do that. He apparently did not try.

The approach we take allows for payment of permanent disability benefits, either partial or total, to commence at the point when temporary total disability benefits terminate. How does the interpretation we give to Section 52–1–24 operate in the second example above—that is, the worker who, although having reached maximum medical improvement, is undergoing vocational rehabilitation, but has not completed it when the determination of disability is made? We believe in that instance the hearing officer should be allowed to make the same determination as in the case before us, if evidence is available as to what the worker can reasonably be expected to earn after rehabilitation. The worker would also be entitled to the benefits allowed under Section 52–1–50 (additional compensation necessary for his board, lodging, travel, and other expenses, and for maintenance of his family during rehabilitation up to $3,000). We do not believe the

legislature intended to penalize the worker who tries to go back to work. To the contrary, the purpose of this legislation is to assist workers in returning to gainful employment. *See Garcia v. Schneider, Inc.*, 105 N.M. 234, 731 P.2d 377 (Ct.App. 1986).

■ Therefore, we also hold that in the situation just described, the hearing officer must make a two-part determination. First, the hearing officer should calculate whether the worker is totally permanently disabled during the rehabilitation period; that is, is the sum of the worker's partial disability benefits plus what the worker is able to earn during the rehabilitation period (taking into account, of course, that the worker's earning capacity may be greatly diminished or eliminated by the need to undertake rehabilitation) comparable to the worker's prior earnings? Second, the hearing officer should calculate whether the worker will be totally permanently disabled after the rehabilitation period. The hearing officer's determination may even have to include additional calculations; for example, the worker's earning capacity may change during the course of rehabilitation. We do not read Section 52–1–24 as requiring the hearing officer to fix only one status—either totally permanently disabled or not totally permanently disabled—from the date of maximum medical recovery; the hearing officer's determination can provide for a change, or even multiple changes, in status. We recently held in an unpublished opinion that a worker receiving scheduled injury benefits may acquire the status of being totally permanently disabled at the end of the statutory period provided for scheduled benefits. In that case, the sum of (1) the scheduled benefits and (2) the worker's post-recovery earning capacity was comparable to the worker's pre-injury earnings, whereas the post-recovery earning capacity alone was not comparable to pre-injury earnings.

Next we must consider what happens when the worker fails or refuses to undertake rehabilitation. Section 52–1–50 provides, "The refusal of the employee to avail himself for rehabilitation under the provi-

sions of this section shall not result in any forfeiture or diminution of any award made pursuant to the Workmen's Compensation Act of the state of New Mexico." As we have seen, Section 52–1–24 refers to vocational rehabilitation "as provided in this act." Worker concludes from these provisions that the hearing officer cannot consider his post-rehabilitation earning capacity until he actually completes rehabilitation. Thus, if he decided against undergoing rehabilitation, the hearing officer would have to determine whether or not he is totally permanently disabled without reference to possible rehabilitation. We disagree.

■ By enacting Section 52–1–24 to include a formula for determining comparable wages or salary, one essential ingredient of which is the ability to earn after maximum medical improvement and vocational rehabilitation, the legislature could not have intended the result worker here urges. By simply refusing vocational rehabilitation, a worker in need of rehabilitation could be guaranteed permanent total disability. We will not interpret statutes in such a manner that produces absurd results. *In re Martinez' Will*, 47 N.M. 6, 132 P.2d 422 (1942).

In *Barela*, we dealt with a somewhat analogous situation. There we considered the need to prove permanent physical impairment as required by Section 52–1–25 in order to recover permanent total disability under Section 52–1–24. We said that, unless Section 52–1–24 was read to require that proof, a worker, by failing to establish the application of the American Medical Association's guidelines or comparable publication, could be assured of receiving permanent total disability. The same applies here. By refusing rehabilitation without risk of forfeiture or diminution, worker might be assured of permanent total disability benefits.

■ Moreover, as we interpret Section 52–1–24, there is no conflict with Section 52–1–50. The worker's award is not forfeited or diminished by his refusal to avail himself for rehabilitation. The determination of the worker's status is made without

reference to whether or not the worker actually will decide to undertake rehabilitation. The hearing officer, in keeping with the Act's purpose of encouraging and assisting workers to return to gainful employment, assumes that the worker will undertake reasonable rehabilitation. If the worker refuses rehabilitation, his disability benefits are not altered. (On the other hand, if the worker tries rehabilitation and it is not as successful as predicted, he could seek a redetermination of whether he is totally permanently disabled.)

We affirm the compensation order.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.