810 P.2d 1252

**Ford Milton EASTERLING, Claimant–Appellant,**

v.

**WOODWARD LUMBER COMPANY, Employer, and Lumberman's Underwriting Alliance, Insurer, Respondents–Appellees.**

No. 12074.

Court of Appeals of New Mexico.

April 11, 1991.

Jerald A. Valentine, Las Cruces, for claimant-appellant.

Hollyce Farrell, Butt, Thornton & Baehr, P.C., Albuquerque, for respondents-appellees.

## OPINION

BIVINS, Judge.

Worker appeals the compensation order by the Workers' Compensation Administration awarding him twenty-five percent permanent partial disability. He raises three issues on appeal: (1) error in making a determination of permanent partial disability before completion of rehabilitation; (2) error in failing to find worker totally and permanently disabled; and (3) error in allowing employer credit for overpayment. Because the workers' compensation judge (judge) found worker unable to return to his former job, would need vocational rehabilitation to restore him to suitable employment, and would likely benefit from vocational rehabilitation, we remand for further findings of fact to clarify the basis for making a determination of disability prior to completion of rehabilitation. We hold substantial evidence supports the judge's finding of twenty-five percent permanent partial disability, assuming the judge on remand decides that determination can be made prior to completion of vocational rehabilitation. We also hold that the judge may allow credit for overpayment if he decides that the determination of permanent partial disability is appropriate at this time and before completion of vocational rehabilitation.

## JUDGE'S DECISION

The judge found that worker sustained an accidental injury in the course and scope of his employment on May 1, 1988; that as a direct and proximate result of the accident, worker suffered the injury to his lower back without structural derangement, resulting in a physical impairment of eighteen percent to the body as a whole; that for a period immediately following the accident until December 21, 1988, worker was temporarily totally disabled, and after December 21, 1988, he was permanently partially disabled to the extent of twenty-five percent; that worker was unable to return to his former job as a long-haul truck driver, would need vocational rehabilitation to restore him to suitable employment, and would likely benefit from vocational rehabilitation; and that reasonable rehabilitation for worker would be in the form of a referral for an evaluation to determine suitability for vocational rehabilitation, including further training and direct job placement. The judge also found that employer paid benefits for temporary total disability from the date of accident to the time of the hearing, together with all medical care, and, as such, the care was adequate and satisfactory.

The parties agree the provisions of Workers' Compensation Act, NMSA 1978 §§ 52–1–1 to –68 (Repl.Pamp.1987) ("1987 Act"), apply to this case. See *Strickland v. Coca–Cola Bottling Co.*, 107 N.M. 500, 760 P.2d 793 (Ct.App.1988). Because this appeal derives from the Workers' Compensation Administration, we apply the whole record standard of review. See *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988).

1. *Determination of Disability Before Completion of Vocational Rehabilitation*

■ Worker argues in effect that the judge, having found worker unable to return to his former job and in need of vocational rehabilitation to restore him to suitable employment, put the cart before the horse when he determined partial disability before completion of vocational rehabilitation. The Act provides, in pertinent part:

**52–1–25. Total disability.**

A. ... "[T]otal disability" means an impairment to a worker resulting by reason of an accidental injury arising out of and in the course of employment which prevents the worker from engaging, for remuneration or profit, in any occupation for which he is or becomes fitted by age, training or experience.

\* \* \* \* \* \*

**52–1–26. Partial disability.**

A. As a guide to the interpretation and application of this section, the policy and intent of this legislature is declared

to be that every person who suffers a compensable injury with resulting partial disability should be provided with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards.

. . . . .

C. The hearing officer shall determine the percentage of disability by considering the work the worker is capable of performing or the work the worker would be able to perform if vocational rehabilitation is required pursuant to Section 52-1-50 NMSA 1978.

\* \* \* \* \* \*

**52-1-50. Vocational rehabilitation services.**

C. . . . the employer shall furnish vocational rehabilitation services for the worker who has suffered an injury. . . . When, as a result of the injury, the worker is unable to perform the pre-injury job with the same employer or unable to perform modified work with the same employer, he shall be entitled to vocational rehabilitation evaluation, counseling and training if necessary to return the worker to either a job related to his former employment or suitable employment in a nonrelated field. . . .

§§ 52-1-25; -26; -50.[1] In making his argument, worker relies on two cases of this court which peripherally dealt with a similar question.[2]

In *Garcia v. Schneider, Inc.*, 105 N.M. 234, 731 P.2d 377 (Ct.App.1986), in dicta, we said that the purpose of the Act is not to turn every injury into disability and that in fact the determinations of disability cannot be properly assessed, except in the obvious cases, until the injured worker, unable to return to his or her former job, has been afforded the benefit of vocational rehabilitation. We cited *National Tea Co. v. Industrial Commission*, 97 Ill.2d 424, 73 Ill.Dec. 575, 454 N.E.2d 672 (1983) as support for this statement. In making that statement, we did not have before us the question as to when, if ever, the judge may deem it appropriate to make a determination of partial disability prior to completion of vocational rehabilitation, other than to note that it could be done in obvious cases. The case before us requires that we articulate when it might be appropriate to make a disability determination before completion of vocational rehabilitation.

In the second case relied upon by worker, *Gonzales v. Lovington Public Schools*, 109 N.M. 365, 785 P.2d 276 (Ct.App.1989), in interpreting the Interim Act, we held that, under the applicable statutory scheme, the Workers' Compensation Administration could consider the wages or salary worker would be able to earn after vocational rehabilitation and properly exercise its discretion in setting a time limit for worker to complete rehabilitation. We also held in that case that temporary total disability benefits should continue for a period of time sufficient to allow a worker to complete vocational rehabilitation, when worker demonstrates a desire to undertake rehabilitation. In that case, worker demonstrated no interest in rehabilitating himself.

In *Gonzales* we set forth three factual situations that could have occurred if, at the time the worker achieves maximum medical improvement, he is unable to earn comparable wages. Those were (1) the worker is not a candidate for vocational rehabilitation; (2) the worker is a candidate but rehabilitation may be prolonged; or (3) the worker, although a candidate, refuses or fails to avail himself of rehabilitation. Although the judge in this case made no specific finding regarding worker's interest in rehabilitation, worker's brief suggests that he does desire this benefit and wishes to reenter the job market so as to restore his wages. He makes the policy argument

---

**1.** Sections 52-1-25 and -26 have since been amended, and Section 52-1-50 was repealed by the 39th Legislature, 2nd Special Section, effective January 1, 1991. *See* 1990 N.M. Laws, ch. 2, §§ 7, 9, 151, 153.

**2.** The statutory sections cited to in the two cases were amended in 1987 and again in 1990. The 1990 amendments, effective January 1, 1991, revise terminology, such as "maximum medical improvement," which was present in the Interim Act. *See* 1990 N.M.Laws, ch. 2, § 10, enacting Section 52-1-25.1.

that to deprive him of this opportunity by reducing his disability while attempting to rehabilitate himself not only defeats the intent of the Act but also forces him to go on welfare until rehabilitation is completed.

Although we are not dealing with the same statutory provision for total disability addressed in *Gonzales*, we believe *Gonzales* provides some guidance. If the worker is determined to be unable to return to his former employment, as is the case here, and is in need of vocational rehabilitation to return him to suitable employment and would likely benefit from that rehabilitation, then we believe it is appropriate in most cases to defer a determination of disability pending completion of rehabilitation. This may not be true in all cases. For example, as we discussed in *Gonzales*, the worker may have no desire to undertake vocational rehabilitation. Additionally, there may be a situation in which the worker would be able to engage in employment for which he is suited, while retraining for a more comparable employment or one that would be better suited for him. In the first example, there would of course be no reason to defer a determination of disability when worker has no desire to undertake it. In the second example, there may be no reason to defer the determination because worker can return to the job market while engaging in rehabilitation. There may be other examples for making an early determination of disability, and the examples are not intended to be exclusive.

Nonetheless, we believe the 1987 Act is even more supportive of deferring, in appropriate circumstances, the disability determination until after rehabilitation than was the Interim Act. *See, e.g.,* § 52–1–26(C). The Interim Act defines temporary total disability as the worker's inability "to perform his duties prior to the date of his maximum medical improvement." § 52–1–26 (Cum.Supp.1986). In contrast, the revision applicable to this case drops the reference to maximum medical improvement, resulting in the termination of temporary total disability being more dependent upon the ability to work rather than "abstract notions about maximum recovery." *UMWA by Roberts v. Lewis,* 309 S.E.2d 58, 62 (W.Va.1983) (temporary total disability benefits continue where claimant has reached maximum degree of medical improvement but has not yet been released to work); § 52–1–25(A). Consequently, in this case, where worker has reached maximum medical improvement, but his expert did not recommend that he return to work until after resolution of employment issues, a deference to the disability determination might be proper.

Furthermore, the legislative intent that every injured person be provided the opportunity "to return to gainful employment as soon as possible with minimal dependence on compensation awards" must be considered. § 52–1–26(A). Thus, if worker's award is reduced due to a determination of twenty-five percent permanent partial disability prior to rehabilitation, he would doubtless need to work during rehabilitation. If he engages in rehabilitation on a full-time basis and is only employable at minimum wage during such time, he would either have to work full time and prolong the rehabilitation period, or be unable to earn a livelihood. *See UMWA by Roberts v. Lewis; see also Freeman v. Armour Food Co.,* 380 N.W.2d 816 (Minn.1986) (employer liable for total temporary disability benefits until employee was totally rehabilitated); *Boise Cascade Corp. v. Jones,* 63 Or.App. 194, 663 P.2d 427 (1983). However, should the judge determine that rehabilitation is only part-time and worker can earn a livelihood while being rehabilitated, then a twenty-five percent permanent disability determination might be proper prior to rehabilitation. The judge must weigh the financial restraints imposed upon worker against the legislative mandate to rapidly reinstall him in the workplace. In any event, the judge has jurisdiction to readjust the award at the end of rehabilitation or at another time when circumstances demand reevaluation.

Based on the findings, we are unable to determine whether the judge believed that worker could return to suitable employment while taking advantage of vocational rehabilitation. We therefore remand for

additional findings so that the judge can articulate the basis for making a determination before completion of vocational rehabilitation, based on the guidelines provided here, and to modify his findings to postpone that determination. We do not suggest how the judge should rule.

### 2. Claimed Error in Failing to Find Worker Totally and Permanently Disabled

■ We address this question only to avoid further appeal should the judge on remand determine he could decide disability prior to completion of vocational rehabilitation.

The judge found that from the date of the accident until December 21, 1988, worker was totally disabled under Section 52–1–25, as set forth above, in that he suffered an impairment which prevented him from engaging, for remuneration or profit, in any occupation for which he is fitted by age, training, or experience. From and after December 22, 1988, the judge found worker, to the extent of twenty-five percent, unable to perform work for which he is fitted by age, education, or training. He also found worker's previous job, before the accident, was a long-haul truck driver and that past employment experience included that of auto service manager, turquoise cutter, and long-haul truck driver. Worker is forty-eight years of age, completed the eighth grade, obtained a GED, and completed three years of college training.

Worker challenges the findings relating to the permanent partial disability of twenty-five percent as not being supported by substantial evidence. He argues on appeal that the judge erred in failing to find him totally disabled.

Worker claims that he satisfied his burden of proving permanent total disability once he established his age, education, training, and general physical and mental capacity. See Amos v. Gilbert W. Corp., 103 N.M. 631, 711 P.2d 908 (Ct.App.1985) (once worker establishes he is incapacitated from performing any work at any gainful occupation for which he is reasonably suit-

ed, the burden of coming forward with evidence shifts to the employer to demonstrate the employability for a particular job for which he is reasonably fitted); see also Brown v. Safeway Stores, Inc., 82 N.M. 424, 483 P.2d 305 (Ct.App.1970). Worker argues that he satisfied his burden by showing that pain and other limitations prevent him from engaging in any gainful employment for which he was fitted. He also contends that employer totally failed to offer any proof of worker's employability in any particular job for which he was fitted.

The judge had before him evidence that worker had post-traumatic pain, that is, back pain for which the doctor did not have a specific structural or objective explanation, and that worker had preexisting bladder problems that were subjectively worse after the injury. Expert medical testimony from Dr. Diven also established that worker had "symptom magnification," in that worker had complaints of pain that seem to be out of proportion to their objective findings. For example, worker said he could not sit still for long periods of time, but, contradictorily, was able to sit for approximately forty-five minutes when reading Louis L'Amour novels in the doctor's waiting room. Dr. Diven did not believe that worker's complaints were intentionally false. Another expert also stated that worker's complaints were not exaggerated, despite the lack of objective corroboration.

The judge also had before him evidence of worker's prior work experience in certain jobs such as chainman, tire recapper, sales manager at a Goodyear store, service counselor, turquoise cutter, and truck driver. There was testimony that some of these jobs were no longer available and that others were too strenuous for worker to perform, but that they involved some sedentary work. Although Dr. Diven stated that worker could safely resume his activities, he noted that whether worker could do it with acceptable pain was another matter. He said that worker's pain was unrelenting; worker found sitting in a truck unbearable. Dr. Diven did not place any restrictions on worker to ensure the safety of his back because, due to lack of

structural damage, safety was not an issue. However, some limitations were needed to secure some degree of comfort. Truck driving was outside the range of worker's subjective complaints, as was tolerating any given position for more than one hour. In contrast, subsequent to an independent medical exam, another physician believed worker could return to truck driving.

Worker, based on testing at the Technical Training Institute in Las Cruces, desires to be rehabilitated as an electronics technician and believes he would be employable thereafter. Dr. Diven, addressing appropriate occupations for worker, stated that worker would be a vocational challenge due to his age. A vocational expert recommended that worker undertake technical training. Employer offered no additional evidence regarding worker's employability for a particular job for which he was fitted except as discussed above.

In making a whole record review, it is not a function of this court to reweigh the evidence. The judge could give such weight as he deemed appropriate to the testimony of worker and his witnesses. Worker testified as to pain and discomfort and his attempts at work or activities; experts testified as to the lack of objective injury, but that worker's pain was not exaggerated. The judge was free to determine that worker was not totally disabled. However, this does not answer the question as to whether it was appropriate to make the determination of permanent partial disability prior to successful completion of vocational rehabilitation, as discussed. *See Gonzales v. Lovington Public Schools*, 109 N.M. at 370, 371, 785 P.2d at 281, 282; §§ 52-1-26, -50(C).

3. *Overpayment Credit*

█ We also address this issue in the interest of judicial economy.

By amendment to his docketing statement, worker asks that we disallow the credit given employer for overpayment of temporary total disability beyond December 21, 1988. While recognizing that *Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 689 P.2d 289 (Ct.App.1984), authorizes credit, he contends that it was inappropriate in this case to allow it. He contends that the judge's order allowing credit hits worker "with a double whammy." Basically, he advances a fairness argument. First, he says that his benefits for temporary total disability will reduce to twenty-five percent permanent partial; that he is unemployed; and that he cannot obtain employment until he completes vocational rehabilitation. Whether worker is able to obtain employment during vocational rehabilitation remains to be determined on remand. Further, if on remand the judge reinstates temporary total disability benefits during vocational rehabilitation, the credit may be reduced or eliminated. Aside from that, we note that the credit was not to be applied until the end of the statutory period. In other words, employer would not recover the overpayment until the end of the statutory period of 500 weeks. This is consistent with *Paternoster; see also Apex Lines, Inc. v. Lopez*, 112 N.M. 309, 815 P.2d 162 (Ct.App.1991) (Ct. App. No. 12,010). Worker's equitable arguments lose much of their force when considered in this light.

CONCLUSION

We therefore remand for further findings of fact to clarify the basis for making a determination of disability prior to completion of rehabilitation. We hold the finding of twenty-five percent permanent partial disability is supported by substantial evidence, assuming the determination can be made prior to completion of vocational rehabilitation, and the judge may allow credit for overpayment if he then decides that the determination of permanent partial disability is appropriate at this time and before completion of vocational rehabilitation. If he defers the determination of permanent partial disability, however, the credit issue may be moot. Finally, the judge should consider the efforts of worker's attorney on appeal in the event further benefits are awarded on remand.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.