833 P.2d 1204

Louise TOYNBEE, Claimant–Appellant,

v.

MIMBRES MEMORIAL NURSING HOME, and Mountain States Mutual Casualty Company, Respondents–Appellees.

No. 12778.

Court of Appeals of New Mexico.

May 22, 1992.

Frederick H. Sherman, Sherman & Sherman, P.C., Deming, for claimant-appellant.

Gary Jeffreys, Jeffreys, Cooper & Associates, Deming, for respondents-appellees.

## OPINION

DONNELLY, Judge.

Worker appeals from an order of the workers' compensation judge (WCJ) finding

that she was no longer temporarily totally disabled and finding that she is fifteen percent permanently partially disabled. The appeal poses three issues: (1) whether the WCJ erred in failing to determine that Worker was temporarily totally disabled as a matter of law; (2) whether findings of fact adopted by the WCJ are supported by substantial evidence; and (3) whether the WCJ erred in failing to award proper attorney's fees. For the reasons discussed herein, we affirm the WCJ's determination as to the percentage of Worker's permanent partial disability, and remand for adoption of additional findings of fact and conclusions of law and entry of an amended compensation order relating to the duration of Worker's temporary total disability and the award of attorney's fees.

## FACTS

Worker was employed as a nurse's aide at Mimbres Memorial Nursing Home (Employer) in Deming. Prior to being hired by Employer, Worker had been employed as a salesclerk and as a convenience store clerk. On July 2, 1986, while working for Employer, she injured her low back and left knee while assisting a patient. Employer paid Worker's medical expenses and temporary total disability benefits from August 4, 1986, to November 24, 1988, when it reduced Worker's benefits from $122.67, to twenty percent disability or $24.53 per week. Thereafter, Worker filed an action for workers' compensation benefits seeking to extend the payment of temporary total disability payments, and requesting an award of permanent partial disability and vocational rehabilitation benefits.

Employer and its insurance carrier (Respondents) filed a timely response rejecting the recommended resolution in part. In rejecting the proposed resolution, Respondents argued that Worker had reached maximum medical improvement; that she had sustained a twenty-percent permanent disability; that she was no longer temporarily totally disabled; and that Worker could obtain suitable employment without the necessity of vocational rehabilitation.

Following a hearing on the merits, the WCJ adopted findings of fact and conclusions of law determining that Worker sustained work-related injuries to her back and left knee and was "permanently partially disabled to the extent of 15%" of her whole body. The findings determined that as a result of her accident Worker suffered "an impairment to a member [left knee] appearing in Section 52–1–43(B) of the ... Act" and that such injury was "separate and distinct" from the impairment resulting from the injury to her back. The WCJ also found that Worker "suffers from disabling pain"; that she was unable to return to her former job; and that she was in need of vocational rehabilitation benefits consisting of job placement.

Based upon the findings of fact and conclusions of law adopted by the WCJ, Worker was awarded benefits at the rate of $131.84 per week for temporary total disability from July 16, 1986, to November 15, 1988, and thereafter was awarded fifteen percent permanent partial disability benefits at the rate of $19.78 per week. The WCJ also awarded Worker the sum of $3,280 for her attorney's fee, plus gross receipts tax thereon, and denied her claim alleging that Respondents had reduced her compensation benefits in bad faith.

## I. CLAIM OF TEMPORARY TOTAL DISABILITY

The WCJ found that Worker injured both her low back and left knee as a result of her accident on July 2, 1986. The WCJ also determined that from July 16, 1986, until November 16, 1988, Worker was temporarily totally disabled; that Worker had "reached maximum medical improvement to a reasonable medical probability on November 16, 1988"; and from July 16, 1986, she was temporarily totally disabled with an "impairment [of] 15% of the whole body."

Worker argues that the WCJ disregarded undisputed medical testimony indicating that at the time of trial on July 27, 1989, in

addition to the disability resulting from her back injury, she also was recovering from an operation on her left knee and was still undergoing physical therapy following her surgery. Worker also contends that the WCJ erred in finding that she was no longer temporarily totally disabled after November 15, 1988, because she had not yet attained maximum medical improvement of her left knee and she had not been provided necessary vocational rehabilitation benefits.

Both Worker and Respondents agree that the Interim Act (1986 N.M.Laws, ch. 22) is applicable to the facts of this case. NMSA 1978, Section 52-1-26 (Cum.Supp. 1986), in effect at the time of Worker's accident, provided: "As used in the Workmen's Compensation Act ..., 'temporary total disability' means the inability of the workman, by reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of his maximum medical improvement."

### A. Substantial Evidence

In contesting the amount of her award, Worker challenges the sufficiency of the evidence to support the WCJ's finding that she was only permanently partially impaired in the amount of "15% of the whole body." Worker contends that contrary to this finding, she was entitled to continue receiving temporary total disability because she had not yet been released to return to work by her doctor, Respondents failed to present evidence that she was capable of earning a comparable wage, and because both Drs. Alan Davis and Arthur Bieganowski testified that she should not seek employment until her medical condition improved. We think these contentions are without merit.

Dr. Davis, an orthopedic surgeon, agreed that Worker should remain away from her former work as a nurse's aide; however, he testified that he believed she could be released to do other types of work which she was qualified to perform. Dr. Reymundo Molina, a vocational rehabilitation evaluator, testified there were other jobs Worker could perform which paid comparable wages. Dr. Molina stated that he had reviewed Worker's medical history, educational background, and experience. He found that after conducting a labor market analysis, and after considering both her back and knee conditions, Worker was capable of performing other types of work such as a special education assistant or a teacher's aide, earning $6.56 per hour and $6.72 per hour respectively, together with fringe benefits.

On appeal, we review the whole record in the light most favorable to the agency decision, but do not review favorable evidence with total disregard of any contrary evidence. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). The burden of establishing that a worker is totally or partially disabled is upon the worker. *See Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985). Whether post-injury wages which a worker is shown to be capable of earning are comparable to pre-injury wages is a question of law under the applicable statute. *See Carpenter v. Arkansas Best Corp.*, 112 N.M. 1, 810 P.2d 1221 (1991). Applying the above authorities to the record on appeal, we conclude that the record supports the WCJ's finding that Worker was able to engage in other types of work consistent with her qualifications and physical limitations.

### B. Purported Stipulation

Worker also argues the WCJ found that she had suffered a lower percentage of permanent partial disability than that which had originally been stipulated to by the parties. Prior to trial, the parties drafted and signed a proposed pretrial order which included a proposed stipulation that "[Worker's] present anatomical impairment is to the knee (5%) and lower back

(15–20%)." The order, however, was never entered because of a disagreement of the parties concerning certain of its provisions. At trial, Worker sought to establish that the percentage of disability to her back was higher than that set forth in the proposed stipulation. In response to Worker's assertions that she should be permitted to present evidence that the disability to her back exceeded that contained in the proposed order, the WCJ stated, "[Counsel for Worker is] at liberty to submit whatever evidence you have to the extent that it shows disability, whether it's 15–30%, 15–20%, whatever the figure is." In view of the fact that the pretrial order was never entered, that Worker sought to present evidence outside the parameters of the claimed stipulation, and the WCJ ruled that he would not limit the parties to a specific percentage of disability, we think it is clear that the proffered stipulation was not binding on the parties.

### C. Claim of Error as to Percentage of Disability

■ We affirm the finding of the WCJ determining that Worker was fifteen percent partially disabled as to her body as a whole. The WCJ found that Worker "has a permanent physical impairment. The impairment is 15% of the whole body, as determined by Dr. Alan Davis to a reasonable medical probability." Our examination of the record indicates that the medical experts called by Worker to testify concerning causation and the percentage of Worker's disability resulting from her work-related accident did not testify that she suffered a permanent physical impairment to her body as a whole, in excess of fifteen percent under the existing American Medical Association's (AMA) guides to the evaluation of permanent impairment, or under a comparable AMA publication. *See* NMSA 1978, § 52–1–25 (Cum.Supp.1986). Absent such testimony, Worker's argument on appeal that she is entitled to a percentage of permanent partial disability greater than fifteen percent is flawed because of a lack of expert medical testimony indicating that Worker suffered a higher percentage of disability under AMA guidelines. *Id.; see also Barela v. Midcon of N.M., Inc.,* 109 N.M. 360, 785 P.2d 271 (Ct.App.1989). In *Barela* we interpreted the Interim Act to necessitate proof by specific "reference to AMA guidelines [or comparable publications by the American Medical Association] to prove permanent physical impairment in order to establish *partial* disability." *Id.* at 363, 785 P.2d at 274; § 52–1–25. In light of the absence of the requisite testimony as required by Section 52–1–25 of the Interim Act, we affirm the WCJ's findings with respect to Worker's percentage of overall permanent partial disability.

### D. Issue as to Maximum Medical Improvement

■ The WCJ found that Worker reached maximum medical improvement on November 16, 1988, and that thereafter she should be awarded partial disability payments. The order implementing this finding also directed that Worker be furnished with vocational rehabilitation in the form of job placement. The compensation order was entered November 30, 1990. Worker argues the WCJ erred in determining that she reached maximum medical improvement on November 16, 1988, and thereafter was no longer temporarily totally disabled, because she could not reasonably be expected to participate in job placement or to obtain other employment during the time she was recovering from an operation on her knee and was undergoing physical therapy. The question of whether an injured worker has reached maximum medical improvement is a fact question to be determined by the finder of fact. *Carter v. Weyerhaeuser Co.,* 234 Neb. 558, 452 N.W.2d 32 (1990). Whether a worker has attained maximum medical improvement is a factor to be considered in resolving the question of whether a worker is no longer temporarily totally disabled.

The WCJ found that Worker was "temporarily totally disabled from July 2, 1986

*until November 15, 1988,* a period of 124 weeks...." (Emphasis added.) It is undisputed that Worker underwent surgery on her knee on May 31, 1989. The WCJ found that both Worker's back and knee injuries were "a direct and proximate result of the accident of July 2, 1986." The record also indicates that at the time of trial on July 27, 1989, Worker was still undergoing physical therapy for her knee and had not yet been furnished with vocational rehabilitation services in the form of job placement. Additionally, the WCJ found that Worker was "unable to return to her former job and would need vocational rehabilitation to restore her to suitable employment. [Worker] would likely benefit from vocational rehabilitation [consisting of] job placement." These findings were embodied in the WCJ's conclusions of law and the compensation order entered on November 30, 1990.

On appeal, a reviewing court liberally construes findings of fact adopted by the fact finder in support of a judgment, and such findings are sufficient if a fair consideration of all of them taken together supports the judgment entered below. *State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.,* 102 N.M. 22, 690 P.2d 1016 (1984); *Foutz v. Foutz,* 110 N.M. 642, 798 P.2d 592 (Ct.App. 1990). However, where doubt or ambiguity obscures the basis for the judge's ruling, or where the findings are insufficient to permit the reviewing court to properly decide the issues raised on appeal, justice may require that the cause be remanded for adoption of additional findings and conclusions so as to clarify a determinative issue. *See Foutz v. Foutz; Varela v. Arizona Pub. Serv.,* 109 N.M. 306, 784 P.2d 1049 (Ct.App.1989); *Corlett v. Smith,* 106 N.M. 207, 740 P.2d 1191 (Ct.App.1987).

Under the Interim Act, if vocational rehabilitation benefits are found to be necessary, the effect of such benefits in enabling a worker to obtain suitable employment is a factor to be considered in determining the degree of a worker's partial disability, since in promulgating the Interim Act, the legislature changed the test for determining disability from "capacity to perform work" for which a worker is fitted by age, education, training, general physical and mental capacity and previous work experience to a determination of whether a worker's wage-earning ability has been affected. *Cf. Barela v. Midcon of N.M., Inc.* (test of disability under Interim Act changed to question of whether worker's wage-earning ability has been altered). We think that remand is appropriate here to adopt additional findings of fact and conclusions of law in order to clarify the effect Worker's knee injury, and her need for job placement, had upon the duration of Worker's total temporary disability.

### E. Job Placement Benefits

Dr. Molina testified that at the time of trial employers were currently advertising for applicants to fill available job positions performing clerical work or duties as switchboard operators, and that in his opinion Worker was qualified and physically able to perform both of these types of work. Respondents contend that on the basis of testimony in the record the WCJ could properly determine that Worker's permanent partial disability ended on November 15, 1988, even though Worker had not in fact actually been furnished with vocational rehabilitation in the form of job placement as specified in the compensation order dated November 30, 1990.

In *Gonzales v. Lovington Public Schools,* 109 N.M. 365, 785 P.2d 276 (Ct. App.1989), a case involving the Interim Act, we held that the WCJ could consider the wages or salary a worker could reasonably be expected to earn after the conclusion of vocational rehabilitation, and the hearing officer could also properly fix a time limit for the worker to complete rehabilitation based upon the evidence in the record. *Gonzales* also held that total disability benefits continue for a sufficient period of time to permit the worker to complete vocational rehabilitation.

Similarly, this court held in *Easterling v. Woodward Lumber Co.*, 112 N.M. 32, 35, 810 P.2d 1252, 1255 (Ct.App.1991), in interpreting the 1978 Act, that:

> If the worker is determined to be unable to return to his former employment, as is the case here, and is in need of vocational rehabilitation to return him to suitable employment and would likely benefit from that rehabilitation, then we believe it is appropriate in most cases to defer a determination of disability pending completion of rehabilitation.

In *Gonzales* the hearing officer determined that the worker had reached maximum medical improvement and even though he had not undertaken vocational rehabilitation, evidence was available indicating what the worker could reasonably be expected to earn following completion of rehabilitation. Although *Gonzales* recognized that the hearing officer could calculate the worker's percentage of permanent disability based upon evidence before the court indicating what the worker could reasonably expect to earn after rehabilitation, in the instant case, there is no evidence that vocational rehabilitation benefits in the form of job placement were furnished to Worker despite the WCJ's finding that such benefits were needed in order to "restore her to suitable employment." Here, there is no evidence that Worker refused to accept vocational rehabilitation benefits or declined to participate in a job placement program. Vocational rehabilitation benefits are intended to assist a worker who is unable to return to his or her former job in order that the worker may be restored to suitable employment. *Jaramillo v. Consolidated Freightways*, 109 N.M. 712, 790 P.2d 509 (Ct.App.1990).

■ The compensation order herein found that Worker was unable to return to her former employment and was in need of vocational rehabilitation benefits in the form of job placement; however, the order modified the award of temporary total disability benefits prior to the time job placement benefits were actually furnished.

Under the Interim Act, "a worker is entitled to total disability benefits if the sum of (1) what the worker can [presently] earn, plus (2) [her] partial disability benefits is not comparable to the worker's predisability wages or salary." *Barela v. Midcon of N.M., Inc.*, 109 N.M. at 364, 785 P.2d at 275. Thus, where a worker has established that she is unable to return to her former employment and is in need of job placement benefits in order to be restored to suitable work, if the WCJ finds that temporary total disability benefits should be terminated prior to the time that vocational rehabilitation benefits are actually furnished, an integral factor to be considered in determining the date for discontinuance of temporary total disability benefits is the amount of time which will reasonably be necessary for the worker to avail herself of such job placement benefits in order to enable the worker to obtain other suitable employment.

■ Worker was entitled to vocational rehabilitation benefits in the form of job placement under NMSA 1978, Section 52–1–50 (Cum.Supp.1986) to assist her in obtaining other suitable employment. *See Garcia v. Schneider, Inc.*, 105 N.M. 234, 731 P.2d 377 (Ct.App.1986). Where proof establishing the need for such benefits is offered, this section is mandatory. *See Ruiz v. City of Albuquerque*, 91 N.M. 526, 577 P.2d 424 (Ct.App.1978).

■ Under the facts before us, we conclude that the cause should be remanded for adoption of additional findings of fact and conclusions of law to determine the date Worker attained maximum medical recovery as to her left knee; the period of time which was reasonably necessary for Worker to be furnished with job placement benefits in order for her to obtain other suitable employment; and the effect, if any, of Worker's physical condition while she was recuperating from her knee operation upon her ability to participate in a job placement program and obtain other employment. *Cf. Sanchez v. Homestake Min-*

*ing Co.* (unless the worker declines such benefits, it is mandatory that the worker receive such vocational rehabilitation services as may be necessary to restore the worker to suitable employment). Resolution of the foregoing issues is essential in order to determine the duration of Worker's total temporary disability.

## II. SUFFICIENCY OF EVIDENCE

Worker challenges numerous findings of fact adopted by the WCJ on the basis they are not supported by substantial evidence. Her contentions raised under this issue duplicate in part arguments asserted by her under the previous point. She alleges that there was insufficient evidence to find: that she was only fifteen percent permanently partially disabled; that she had reached maximum medical improvement; that she had the ability to earn comparable wages; that she is able to perform jobs as a receptionist or clerical worker; that reasonable vocational rehabilitation would be job placement; and that a reasonable attorney's fee to be awarded was $3,280.

██ As discussed previously, Worker failed to present evidence as required by Section 52–1–25 showing that she suffered a higher percentage of disability under existing AMA or comparable AMA publications; thus, we determine that this contention is without merit. *See Barela v. Midcon of N.M., Inc.* Moreover, review of Dr. Davis' testimony disposes of Worker's claim that she had not reached maximum medical improvement as to her back injury. Dr. Davis indicated she reached maximum medical improvement as to her low back as of November 16, 1988.

Similarly, the testimony of Dr. Molina supports the findings of the WCJ that Worker was able to perform clerical work or work as a switchboard operator, and that the wages currently being paid for such work exceeded or were comparable to that being earned by Worker at the time of her injury. Dr. Molina also testified that Worker was able to do clerical or similar

work and would only need job placement and on-the-job training. This testimony was sufficient to support the findings of the WCJ relating to Worker's ability to perform the jobs indicated, subject to obtaining job placement assistance.

██ Worker also challenges the WCJ's findings concerning the reasonableness of the award of attorney's fees. We disagree. Under the Interim Act, NMSA 1978, Section 52–1–54(B) (Cum.Supp.1986), a worker is responsible for the payment of his or her own attorney's fees, subject to approval of the amount of such fees by the WCJ. Section 52–1–54(A) of the Interim Act provides in applicable part: "Any attorneys' fees approved by the hearing officer shall not exceed twenty percent of the first five thousand dollars ($5,000) of the benefits secured, fifteen percent of the next five thousand dollars ($5,000) of the benefits secured and ten percent of the remaining benefits secured." Worker contends the WCJ's finding that $3,280, plus tax, constituted a reasonable attorney's fee was contrary to the evidence. Worker also asserts that the WCJ erred by failing to find that Respondents acted in bad faith in reducing the amount of benefits paid to Worker while she was still recuperating from knee surgery.

██ The WCJ found that Respondents' acts in denying Worker's claims and in reducing the amount of benefits payable to Worker "did not amount to fraud, malice, oppression or willful[,] wanton or reckless disregard of the rights of the [Worker]." Respondents contested Worker's claim that her knee injury was causally related to her accident. Worker's petition for workers' compensation benefits listed the nature of her injury as a back injury and omitted any reference to her knee injury. Prior to reducing the compensation benefits, Employer received a letter from Dr. Davis stating that Worker had reached maximum medical improvement as to her back. Under these circumstances, we think the findings of the WCJ rejecting Worker's claim of bad faith

are rational evidence on this record. *See Sosa v. Empire Roofing Co.*, 110 N.M. 614, 798 P.2d 215 (Ct.App.1990).

■ The WCJ found that counsel for Worker secured benefits for Worker, not including future medical benefits, in the sum of $25,305. Based upon this recovery, we conclude that the award of $3,280, plus tax, is consistent with the provisions of Section 52-1-54 of the Interim Act, and the matters shown by the record.

## III. ATTORNEY'S FEES

Worker's final point asserted on appeal argues that the WCJ erred in calculating the amount of attorney's fees that should be paid for her counsel's services herein. As discussed under Point II, we believe the computation of the award of attorney's fees is consistent with the provisions of the Interim Act, Section 52-1-54.

Respondents' answer brief requests that if the WCJ's decision is reversed in whole or in part, then pursuant to SCRA 1986, 12-201(C) (Cum.Supp.1991), this court should determine whether the WCJ erred in finding that the present value of the amounts that Worker's attorney was responsible for securing totalled in the sum of $25,305. Since we remand for additional findings of fact and conclusions of law concerning the duration of Worker's temporary total disability benefits, and the trial court's additional findings may render any discussion of this issue moot, we do not address this issue.

## IV. CONCLUSION

We affirm the award of the WCJ determining the percentage of Worker's permanent partial disability and affirm the computation of attorney's fees entered by the WCJ, subject to the qualification, however, that following remand, if the duration of Worker's temporary total disability is extended, additional attorney's fees should be awarded by the WCJ in light of such award and for the services of Worker's counsel

incident to this appeal. *See Varela v. Arizona Pub. Serv.* The decision of the WCJ as to the duration of temporary total disability is remanded for further additional findings of fact and conclusions of law and entry of an amended compensation order consistent with this opinion.

IT IS SO ORDERED.

ALARID, C.J., concurs.

HARTZ, J., concurs in part and dissents in part.

HARTZ, Judge (concurring in part, dissenting in part).

I agree that we must remand for further proceedings before the WCJ. I cannot, however, join in the analysis in the majority's opinion, which does not pay proper deference to the statutory language of the Interim Act. Perhaps the result on remand reached under the analysis in this opinion would be the same as that reached under the majority opinion—I am not certain what the majority is instructing the WCJ to do on remand—but an analysis based on the statutory language should provide better guidance to the WCJ.

The starting point of my analysis is a description of the statutory scheme under the Interim Act. Because it is undisputed that Worker has been unable to perform her duties as a nurse's aide, I will address only the provisions of the Act that apply to someone in that condition.

Under the Interim Act, the key date for a worker unable to perform the duties she had at the time of injury is the date of maximum medical improvement. Prior to that date the disabled worker suffers from "temporary total disability." After the worker reaches maximum medical improvement, the worker is no longer entitled to temporary total disability benefits. The Interim Act states:

As used in the Workmen's Compensation Act, "temporary total disability" means the inability of the workman, by

reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of his maximum medical improvement.

NMSA 1978, § 52–1–26 (Cum.Supp.1986). Thus, contrary to what the majority opinion appears to say, vocational rehabilitation would not be a factor in determining when Worker's temporary total disability ends. (The sole circumstance in which vocational rehabilitation might affect the period of temporary total disability would be when rehabilitation somehow enables a worker to perform her pre-injury duties prior to the time that she achieves maximum medical improvement. In that circumstance temporary total disability would end.)

Once the WCJ determines that a worker has reached maximum medical improvement, the WCJ then decides whether the worker is entitled to partial disability payments. The Interim Act defines partial disability as:

> a permanent physical impairment to a workman resulting from an accidental injury arising out of and in the course of employment, whereby a workman has any anatomic or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment, copyrighted 1984, 1977 or 1971, or comparable publications by the American medical association.

NMSA 1978, § 52–1–25 (Cum.Supp.1986). The measure of partial disability under the Interim Act is an objective finding based on the physical condition of the worker. Contrary to what the majority opinion appears to say, vocational rehabilitation has nothing to do with the measure of partial disability.

After deciding the extent of a worker's partial disability, the WCJ then must determine whether the worker is entitled to benefits for permanent total disability. "Permanent total disability" is, in pertinent part, defined in the Interim Act as:

> a permanent physical impairment to a workman resulting by reason of an accidental injury arising out of and in the course of employment whereby a workman is wholly unable to earn comparable wages or salary. In determining whether a workman is able to earn comparable wages and salary, the hearing officer shall consider the benefits the worker is entitled to receive under Section 52–1–43 NMSA 1978 [relating to benefits for partial disability]. If the benefits to which the workman is entitled under Section 52–1–43 NMSA 1978 and the wage he is able to earn after the date of maximum medical improvement and vocational rehabilitation as provided in this act is comparable to the wage the worker was earning when he was injured, he shall be deemed to be able to earn comparable wages or salary.

NMSA 1978, § 52–1–24(A) (Cum.Supp. 1986). It is important to note that a worker who is partially disabled may receive permanent total disability benefits for short periods of time. As this court stated in *Gonzales v. Lovington Public Schools*, 109 N.M. 365, 370, 785 P.2d 276, 281 (Ct. App.1989):

> We do not read Section 52–1–24 as requiring the [WCJ] to fix only one status—either totally permanently disabled or not totally permanently disabled—from the date of maximum medical recovery; the hearing officer's determination can provide for a change, or even multiple changes, in status.

For example, a worker who has reached maximum medical improvement and is partially disabled may be ineligible for permanent total disability benefits because the sum of the wages she is able to earn plus her partial disability benefits is comparable to her pre-injury wages. Yet if that worker is unable to earn comparable wages for a period of time because she is undergoing vocational rehabilitation or needs medical care that prevents her from working, she would be entitled to permanent total disability benefits during that period of time.

Although it is tempting to say that the worker is "temporarily totally disabled" for limited periods during which she is entitled to benefits for permanent total disability, use of the phrase in that context can result in confusion because the Interim Act specifically defines "temporary total disability" as applying only to the period before maximum medical improvement. *See* § 52–1–26.

Turning to the present case, I would affirm the WCJ's determination that Worker is not entitled to temporary total disability benefits after November 15, 1988. The WCJ was entitled to rule that Worker had reached maximum medical improvement by that date. Worker does not challenge the expert medical testimony that she had reached maximum medical improvement as to her back by November 16, 1988. The controversy concerning the date of her maximum medical improvement relates to her knee. The majority appears to suggest that Worker had not reached maximum medical improvement because she was undergoing physical therapy for her knee after November 15, 1988. This suggestion, however, overlooks *Baca v. Bueno Foods,* 108 N.M. 98, 100, 766 P.2d 1332, 1334 (Ct. App.1988), which held that "continuing treatment is consistent with maximum medical improvement if it produces improvement that is only symptomatic relief."

More importantly, the WCJ's finding on the date of maximum medical improvement has sufficient support in the record that it must be affirmed. To reach this conclusion requires further analysis of the meaning of "date of maximum medical improvement." The Interim Act defines the "date of maximum medical improvement" as:

the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability.

NMSA 1978, § 52–1–27 (Cum.Supp.1986). It is essential to note that the statutory definition does not set the date of maximum medical improvement as the date at

which the worker actually has reached maximum recovery. It is the first date at which the doctors *think* the worker has reached maximum recovery. The definition can be paraphrased to say that "the date of maximum medical improvement is the earliest date at which qualified medical experts examine the worker and conclude that further improvement is improbable."

Perhaps the statutory definition could be read as saying that the date of maximum medical improvement is determined not solely on the basis of the medical information available at the purported date of maximum medical improvement but also on the basis of additional medical evidence available up to the time of the hearing on the matter. Under that interpretation a worker could be denied benefits for temporary total disability during a period when her prognosis was of continued improvement, if it later appears that the worker did not in fact improve. A doctor at the hearing on the claim for benefits could testify that even though a prognosis of further recovery on, say, January 1 had been based on reasonable medical probabilities, the evidence available at the time of hearing established that the worker had actually reached maximum recovery by January 1; as a result, temporary total disability had ended by January 1. Similarly, the period of temporary total disability could be extended if the worker, after a period of stability when the prognosis is of no further recovery, unexpectedly begins to improve.

I would reject that reading of Section 52–1–27. The statutory language "can no longer be reasonably anticipated" indicates that the anticipating is to be done at the date of maximum medical improvement. One does not "anticipate" the past. Anticipation is of future events. The words "no longer" imply that up to that date further improvement had been anticipated. If improvement had not been anticipated for a period of time prior to a particular date, then the date must be after the date of maximum medical improvement. Thus, the

natural reading of the statutory language is that the date of maximum medical improvement is the date after which the medical evidence first indicates that further improvement is unlikely—i.e., the date after which improvement is no longer anticipated. The date of maximum medical improvement is, say, March 2, 1990, if an informed medical expert on March 3 would say, "It can no longer be reasonably anticipated that the injury will improve."

This natural reading provides clearer guidance to the parties, reducing controversy and enabling the parties to go about fulfilling their obligations under the Interim Act. Errors in prognosis will be made. Workers may unexpectedly recover or fail to recover. But there is no need to modify the date of maximum medical improvement to deal with such eventualities, because the Interim Act is equipped to deal with them under the provisions for permanent disability. The degree of partial disability can be reevaluated; and benefits for permanent total disability can be awarded if later medical problems or treatment prevent the worker from earning wages. *See Gonzales v. Lovington Pub. Sch.;* § 52–5–9 (Cum.Supp.1986).

In this case the evidence indicates that by November 15, 1988, Worker's symptoms had been relatively stable for a long time. Dr. Davis's office notes do not refer to Worker's knee for more than a year before she complained of knee swelling on March 31, 1989. Worker's claim filed on January 4, 1989, states that her "low back" was the part of the body injured; and the Recommended Resolution of the Workers' Compensation Division mediator filed on February 20, 1989, recites that the parties stipulated that "[t]he injury sustained by [Worker] was of her back." Hence, the WCJ could properly find that Worker reached maximum medical improvement by November 16, 1988, because as of that date there was no reason to anticipate further recovery of the knee injury. I would therefore affirm the WCJ's determination of the date of maximum medical improvement.

Having fixed the date of maximum medical improvement, the WCJ then properly considered the extent of Worker's partial disability. For the reasons stated in the majority opinion, I agree that the WCJ could properly find partial disability to be 15%.

The remaining question, then, is whether Worker was entitled for any period of time to permanent total disability benefits under Section 52–1–24(A). For the reasons stated in the majority opinion, I agree that the WCJ could properly find that Worker was capable of earning a comparable wage, at least for the great bulk of the pertinent period of time. The record does suggest, however, that Worker could be entitled to permanent total disability during two apparently brief periods of time.

First, Worker would not be able to work—and therefore could not earn a comparable wage—at the time of her operation and for a recovery period thereafter. The only basis for denying permanent total disability benefits during that period of time would be the failure of Worker to establish the length of that period. On this record, however, I cannot determine if the WCJ so ruled. Therefore, I would remand for pertinent findings and conclusions concerning Worker's entitlement to permanent total disability benefits while she was physically incapable of working because of the problem with her knee and the treatment for the problem.

Second, the WCJ's award of vocational rehabilitation benefits to Worker suggests that the WCJ found that Worker would not be able to obtain employment without professional help in applying for jobs and convincing employers of her capacities. Such professional help would probably not delay Worker's entry into the job market to any significant extent. The problem here is that apparently Respondents did not offer such employment assistance prior to the WCJ's order requiring such vocational rehabilitation. The failure to provide assistance raises both factual and legal questions. The factual questions arise because

the record is unclear as to why Worker had not received job-placement benefits prior to the WCJ's order. The legal questions arise because the Interim Act does not provide clear guidance on how Worker's entitlement to benefits for permanent total disability would be affected by the reasons for her not receiving job-placement benefits. Our only reported decision touching on the subject states that a worker cannot prolong entitlement to permanent total disability by refusing vocational rehabilitation. *Gonzales v. Lovington Public Schools*. Beyond that, we may be left with no more guidance than the rule of "fundamental fairness" to which we have resorted in other circumstances in which the Workers' Compensation Act does not provide an answer, *see Paternoster v. La Cuesta Cabinets*, 101 N.M. 773, 776, 689 P.2d 289, 292 (Ct.App.1984), although we should seek a result that encourages rehabilitation and a return to gainful employment, *see Easterling v. Woodward Lumber Co.*, 112 N.M. 32, 35, 810 P.2d 1252, 1255 (Ct.App.1991). For example, if Worker had demanded job-placement assistance, Respondents had refused to provide such assistance, and Worker consequently was unable to obtain employment, then Respondents should be liable for permanent total disability benefits under Section 52–1–24 during the period of time that Respondents refused to provide the requested assistance. On the other hand, if Worker never requested job placement benefits and insisted that she was incapable of any work without further job training, then perhaps Respondents should not be penalized for failing to volunteer job-placement assistance. I would remand to the WCJ for further findings and conclusions relating to the delay in providing job-placement benefits and what, if any, award of permanent total disability benefits should be made as a result.

Finally, a word on attorney's fees. Because Respondents did not cross-appeal on the matter of attorney's fees, they are not entitled to any reduction in attorney's fees on remand. It does not follow, however, that any addition to Worker's disability benefits requires an increase in the award of attorney's fees against Respondents. Respondents have argued on appeal that the WCJ incorrectly computed the award of attorney's fees, resulting in an excessive award. I see no reason why those same arguments could not be used to try to persuade the WCJ that the award of attorney's fees should not be increased even if there is an increase in the award of benefits.