785 P.2d 271

**Gilbert BARELA, Claimant–Appellee,**

**v.**

**MIDCON OF NEW MEXICO, INC., and
Safeco Insurance Company,
Respondents–Appellants.**

No. 10828.

Court of Appeals of New Mexico.

Nov. 7, 1989.

Certiorari Denied Dec. 21, 1989.

Frank P. Dickson, Jr., Dubois, Caffrey, Cooksey, Bischoff & Dickson, P.A., Albuquerque, for claimant-appellee.

Gail Stewart, Gallagher & Casados, P.C., Albuquerque, for respondents-appellants.

## OPINION

DONNELLY, Judge.

On the motion of respondents for rehearing, the prior opinion of the court is withdrawn and the following is substituted.

Respondents Midcon of New Mexico, Inc. (Midcon), and Safeco Insurance Company appeal from a decision of the Workers' Compensation Division (WCD) hearing officer finding that claimant was disabled as a result of a work-related accident and awarded compensation and related benefits. They challenge the sufficiency of the evidence to establish (a) causal connection between any disability and a work-related accident; (b) permanent total disability; and (c) certain outstanding medical bills, vocational rehabilitation expenses, and re-imbursement for travel expenses. Because we hold that claimant failed to establish the requisite proof to receive permanent total disability, we need not reach the causation issue except as related to the issue of claimant's medical bills. We also hold substantial evidence supports payment of medical and related expenses, except for one item as to which there was no proof. We also disallow vocational rehabilitation benefits, since there was no disability established. Accordingly, we reverse on the issue of permanent total disability and affirm as to the medical and related expenses, except as otherwise noted.

The issues raised come under the transient provisions of the Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 through –68 (Orig.Pamp. & Cum.Supp. 1986) (Interim Act).

Claimant was employed by Midcon as a construction laborer. In June 1986, he began to experience pain in his left foot, and on July 31, 1986, he quit work because of continued problems involving that foot. During August and September, 1986, claimant began to experience pain in his right foot, and subsequently in November, he also began to experience low back pain. Claimant underwent surgery on his left foot in April 1987.

Respondents paid workers' compensation benefits to claimant from August 2, 1986 to December 24, 1986, and from April 5, 1987 to November 1, 1987. After respondents terminated payment of benefits, claimant filed a claim seeking an award of permanent disability. Following a formal hearing before a WCD hearing officer, claimant was determined to have been temporarily totally disabled from December 24, 1986 to April 5, 1987, and permanently totally disabled beginning November 2, 1987. The hearing officer also found that in June 1986, claimant sustained accidental injuries to his feet which resulted in (1) plantar fasciitis, predominantly in his left foot; and (2) aggravation of a preexisting condition of spinal stenosis in his lower back. The hearing officer ordered payment of compensation for claimant's disability, together with an award for medical expenses, voca-

tional rehabilitation and reimbursement for unpaid travel expenses.

Following the entry of the final order of disposition on June 20, 1988, respondents filed this appeal.

## PERMANENT TOTAL DISABILITY

At the hearing before the administrative hearing officer, claimant presented the deposition testimony of Dr. Barry Maron, an orthopaedic surgeon. Respondents did not present any medical evidence. Respondents argue that claimant failed to present any expert medical evidence that his disability resulting from injuries to his feet and back was medically or scientifically demonstrable as shown in the American Medical Association (AMA) guides or publications pertaining to the evaluation of permanent impairment.

Dr. Maron testified by deposition on March 7, 1988, that claimant suffered from plantar fasciitis, affecting his feet to some degree, but that he could not quantify such condition or assign a percentage of impairment to the disability as recognized by AMA guidelines. Dr. Maron testified in applicable part:

Q: How is [plantar fasciitis in association with adhesions, scar tissue] related to an impairment for [claimant]?

A: By the book?

Q: Yes, or by your own judgment.

A: Yes, it does imply an impairment, but it's not labeled in numbers on the basis of the AMA guidelines. So you can't label it. All you can say is the man hurts. You can quantitate it by saying he is at the 1, 2, 3, 4, 5 level of pain. That's all I can say. But I can't say it on impairment.[1]

Q: You mean because there is no book that you can make reference to [on the impairment]?

A: Right.

Dr. Maron testified he had not determined claimant's impairment rating or

functional capacity evaluation and had not filled out the impairment rating form as provided by the WCD for determining medical impairment, and that without conducting such assessment, it would be "like taking a number out of the blue, unless you have AMA guidelines that [apply] to the problem." Dr. Maron also stated that he was uncertain why claimant's condition of spinal stenosis had become symptomatic over recent months.

Claimant did not elicit testimony concerning any permanent physical impairment ratings as recognized by AMA guidelines or other scientific source, which would relate to his back condition.

It is undisputed that the applicable statutory provisions governing claimant's claims are governed by the Interim Act. In 1986 the legislature materially revised the Workmen's Compensation Act. See 1986 N.M. Laws, ch. 22. The Interim Act, 1986 N.M. Laws, Chapter 22, Section 101, provides that the provisions of the Act relating to the definitions of total and partial disability "shall apply to injuries and deaths occurring * * * on or after the effective date of those sections." This provision of the Interim Act became effective May 21, 1986. *Strickland v. Coca–Cola Bottling Co.*, 107 N.M. 500, 760 P.2d 793 (Ct.App.1988). Among the substantive changes set in place under the Interim Act, the legislature modified the definition of permanent total disability, partial disability and temporary total disability. See §§ 52–1–24, –25, –26 (Cum.Supp.1986).[2]

Under the Interim Act the legislature changed the test for determining disability from "capacity to perform work" for which a worker is fitted by age, education, training, general physical and mental capacity and previous work experience, to a determination of whether the worker's wage earning ability has been affected. See *Strickland v. Coca–Cola Bottling Co. Compare Quintana v. Trotz Constr. Co.*, 79 N.M. 109, 440 P.2d 301 (1968) (observing that

---

1. See, however, A. Engelberg, *Guides to the Evaluation of Permanent Impairment*, at 56 (3d ed. 1988), published by the AMA, indicating the method for determining the percentage of impairment to an individual's foot or feet.

2. The 1986 Interim Act has subsequently been amended by 1987 N.M.Laws, Chapter 235.

1963 amendments to the Workmen's Compensation Act enacted by a prior legislature, changed the primary test of disability from "wage earning ability" to "capacity to perform work" as delineated in the statute).

Under Section 52–1–24 of the Interim Act, permanent total disability was defined in part as follows:

A. As used in the Workmen's Compensation Act * * * "permanent total disability" means a *permanent physical impairment* to a workman resulting by reason of an accidental injury arising out of and in the course of employment whereby a workman is wholly unable to earn comparable wages or salary. *In determining whether a workman is able to earn comparable wages and salary, the hearing officer shall consider the benefits the worker is entitled to receive under Section 52–1–43 NMSA 1978.* If the benefits to which the workman is entitled under Section 52–1–43 * * * and the wage he is able to earn after the date of maximum medical improvement and vocational rehabilitation as provided in this act is comparable to the wage the worker was earning when he was injured, he shall be deemed to be able to earn comparable wages or salary. "Physical impairment" does not include impairment of function due solely to psychological or emotional conditions, including mental stress. [Emphasis added.]

Section 52–1–25 of the Interim Act defined partial disability:

As used in the Workmen's Compensation Act * * * *"partial disability" means a permanent physical impairment to a workman* resulting from an accidental injury arising out of and in the course of employment, whereby a workman has any anatomic or functional abnormality existing after the date of maximum medical improvement *as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment, copyrighted 1984, 1977 or 1971, or comparable publications by the American medical association.* [Emphasis added.]

Sections 52–1–24 (permanent total disability) and –25 (partial disability) were enacted at the same time and were integral provisions of the Interim Act. The Interim Act specifically provided that the definitions of total and partial disability apply to injuries manifesting themselves on or after the effective date of those sections. *See* 1986 N.M.Laws, ch. 22, § 101.

█ Although conceding that Dr. Maron did not testify concerning disability according to guidelines promulgated by the AMA, claimant nevertheless contends that the legislature did not intend such evidence to constitute an essential element of proof for claims of permanent total disability. Claimant reasons that since the Interim Act Section 52–1–24, defining permanent disability, does not contain language similar to that embodied in Section 52–1–25, relating to partial disability (requiring proof of disability as shown by a medically or scientifically demonstrable finding in the AMA guides to impairment or comparable publications), the legislature did not intend such a requirement for claims of total disability.

Claimant is correct that Section 52–1–24 does not explicitly state that proof of a permanent physical impairment requires reference to AMA publications in order to establish permanent *total* disability. In contrast, Section 52–1–25 of the Interim Act specifically requires reference to AMA guidelines to prove permanent physical impairment in order to establish *partial* disability. Ordinarily, if two statutory provisions enacted at the same time establish different requirements to prove a fact, one would think that the choice of language was intentional and one statutory provision should not be interpreted to incorporate a requirement found only in the other provision.

In this case, however, we believe that it is appropriate to read Section 52–1–24 as incorporating the Section 52–1–25 requirement of reference to AMA guidelines to prove "permanent physical impairment." First, this court's experience with the In-

terim Act convinces us that the legislature that enacted the Act was not concerned with the detailed interrelationships among the provisions of the Act and how the Act would be applied to various recurring, although unusual, circumstances. The apparent legislative intent was to establish certain benchmarks and to leave to the courts the task of "rationalizing" the provisions of the statute. Thus, in interpreting the Interim Act one should not necessarily infer that a requirement imposed explicitly in Section 52–1–25 and omitted from Section 52–1–24 was therefore intended not to apply to Section 52–1–24.

Second, we know of no logical reason to require reference to AMA guidelines in proving permanent physical impairment when one is attempting to establish partial disability but not when one is attempting to establish total disability.

Third, because of the statutory interrelationship between findings of partial and total disability, interpreting Section 52–1–24 as not requiring reference to AMA guidelines could lead to results that we doubt were intended by the legislature. Explanation of this point requires some background discussion. The definition of total disability relates back to the definition of partial disability through the definition of "comparable wages or salary." Under Section 52–1–24, a worker is permanently totally disabled only if he or she "is wholly unable to earn comparable wages or salary." "In determining whether a workman is able to earn comparable wages and salary, the hearing officer shall consider the benefits the worker is entitled to receive under Section 52–1–43 NMSA 1978." *Id.*

■ We conclude that an award of benefits received under Section 52–1–43 include those for partial disability as defined in Section 52–1–25. In other words, a worker is entitled to total disability benefits if the sum of (1) what the worker can now earn, plus (2) the worker's partial disability benefits is not comparable to the worker's predisability wages or salary. Therefore, a worker's partial disability benefits could make the difference as to whether or not he or she is deemed totally disabled. It could happen that adding the partial dis-

ability benefits to the worker's current income would produce a total that is comparable to the worker's former income; whereas without adding in the partial disability benefits, the worker's current income would not be comparable to what it had been before the disability. In that circumstance the worker would receive greater benefits if he failed to prove partial disability than if he established partial disability. If, therefore, we were to interpret Section 52–1–24 as not requiring proof with reference to AMA guidelines in order to establish total disability, then it would be to the worker's benefit not to establish that his or her permanent physical impairment met AMA guidelines. The worker could then prove permanent physical impairment under Section 52–1–24 but not under Section 52–1–25. By failing to establish the application of the guidelines to his or her injuries, the worker would not receive partial disability benefits and would therefore receive total disability benefits. Although we realize that the employer might seek to prevent that result by producing evidence that the worker's impairment met AMA guidelines, we doubt that the legislature intended such a convoluted result.

Once the causal connection between a worker's injury and disability has been established by expert medical testimony, under the former act the extent of plaintiff's disability could be established by non-medical witnesses. *Smith v. City of Albuquerque,* 105 N.M. 125, 729 P.2d 1379 (Ct.App. 1986). Under the provisions of the Interim Act, however, where a worker is claiming either permanent total disability or permanent partial disability, in addition to other proofs required, we conclude that the worker must also establish a permanent physical impairment as required under Section 52–1–25. *See Strickland v. Coca–Cola Bottling Co.* (holding that in order to establish permanent partial disability, a worker must prove the existence of an anatomic or functional abnormality "as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides" or comparable publications).

■ Our review of the record indicates that claimant did not present evidence by a

qualified health care provider that claimant suffered partial or total disability resulting from an anatomic or functional abnormality "as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment ... or comparable publications by the American medical association." *Cf. Strickland v. Coca–Cola Bottling Co.* Proof of such disability is a prerequisite to recovery of partial or total disability under the Interim Act. Therefore, the award must be set aside.

## MEDICAL AND VOCATIONAL REHABILITATION EXPENSES

Respondents also challenge on appeal the hearing officer's order directing payment of certain outstanding medical bills, vocational rehabilitation expenses, and reimbursement for claimant's travel to receive medical treatment.

■ Recovery of medical expenses is not contingent upon recovery of permanent total or permanent partial disability where there has been proof that the medical bills were otherwise reasonable and necessary, and claimant has presented proof of a causal link between the work-related accident and his medical bills. *Bowles v. Los Lunas Schools,* 109 N.M. 100, 781 P.2d 1178 (Ct. App.1989). The hearing officer's order directing payment of claimant's medical bills is supported by substantial evidence, including evidence of a causal connection between claimant's work-related accident and his medical bills, except the payment of the $439.99 bill from Buckland Pharmacy. *See Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 716 P.2d 645 (Ct.App.1986); *DiMatteo v. County of Dona Ana,* 104 N.M. 599, 725 P.2d 575 (Ct.App.1985); *see also Baca v. Bueno Foods,* 108 N.M. 98, 766 P.2d 1332 (Ct.App.1988). The bill from Buckland Pharmacy was not received into evidence, nor was evidence presented that this bill was reasonable or necessary or was incurred as a result of a work-related accident.

■ The hearing officer also found that claimant was entitled to the sum of $335.00 for unpaid mileage for travel to and from medical service providers. The record supports the hearing officer's award of outstanding unpaid reasonable travel expenses necessarily incurred in claimant's receipt of medical treatment resulting from a work-related injury. *See Gonzales v. Bates Lumber Co.,* 96 N.M. 422, 631 P.2d 328 (Ct.App.1981).

■ Finally, respondents also challenge the sufficiency of the evidence to support the hearing officer's award of vocational rehabilitation benefits. An award of vocational rehabilitation benefits is dependent upon proof that the workman is either partially or totally disabled. *See Hernandez v. Mead Foods, Inc.* Since claimant has failed to establish proof of disability as required under the Interim Act, the award of vocational rehabilitation benefits was not supported by requisite substantial evidence.

## CONCLUSION

The dispositional order appealed from is reversed and remanded for entry of an amended dispositional order in accordance with this opinion.

IT IS SO ORDERED.

BIVINS, C.J., and HARTZ, J., concur.