839 P.2d 624

STATE of New Mexico ex rel. Leonard A. HELMAN, Robert Vigil and Francis West, on behalf of themselves and the class of all persons similarly situated, Petitioners–Appellees,

v.

Carlos GALLEGOS, Executive Secretary, New Mexico Public Employees Retirement Association; New Mexico Public Employees Retirement Board et al., Respondents–Appellants.

No. 12614.

Court of Appeals of New Mexico.

June 29, 1992.

Certiorari Granted Aug. 14, 1992.

Ronald J. Van Amberg, Santa Fe, for petitioners-appellees.

Tom Udall, Atty. Gen., Michael Dickman, Asst. Atty. Gen., Santa Fe, for respondents-appellants.

## OPINION

BIVINS, Judge.

Public Employees Retirement Board (PERB) appeals from a judgment of the district court requiring that PERB refund 11/12ths of the purchase cost of service credit to Petitioners who paid twelve times the cost prescribed by the statute and allow the others to pay the cost prescribed by the statute. PERB claims that the district court erred by: (1) elevating the literal words of the statute above the legislative intent; (2) not concluding that Petitioners are barred from recovery under the doctrine of laches; and (3) not concluding that class members who paid for their purchases of credited service without formal protest were barred from recovering any portion of their payments.

We agree with the district court that the plain and unambiguous language of the legislation does not allow for judicial inter-

pretation; therefore, we will not engage in statutory construction. As a corollary to that holding, we also conclude that the Public Employees Retirement Association's (PERA) Rule 1300.10, promulgated to clarify what PERB considered statutory ambiguities, was beyond the authority of PERB and therefore void. Finally, we reject PERB's defenses of laches and voluntary payment as insupportable. Accordingly, we affirm the district court's decision.

## I. *FACTUAL BACKGROUND*

The New Mexico Legislature has adopted, and at times revised, the Public Employees Retirement Act (Act), NMSA 1978, §§ 10–11–1 to –140 (Repl.Pamp.1990). Throughout the period of employment, participating state government and other public employees earn service credit through mandatory employer and employee contributions to the PERA. An employee must have a certain number of years of credit to retire under the Act, the number of years required depending upon the age of the employee. The employee's pension, calculated as a percentage of the employee's final average salary, also depends on the number of years of service credit.

In order to encourage early retirement, the legislature has, at times, provided a method for employees to purchase service credit. This action involves one such provision. 1987 New Mexico Laws, Chapter 253, Section 139 (Section 139), in force during the 76th fiscal year (July 1, 1987 to June 30, 1988), allowed employees to purchase up to five years of additional service credit if they retired after purchasing the credit. Section 139 states:

Section 139. TEMPORARY PROVISION—PURCHASE OF CREDITED SERVICE.—

A member may purchase not more than five years of credited service during the seventy-fifth or seventy-sixth fiscal year subject to the following conditions:

A. the member has five or more years of credited service acquired as a result of personal service rendered in the employ of an affiliated public employer;

B. the member reinstates all forfeited credited service;

C. the purchase cost for each *year* of credited service purchased under the provisions of this section is an amount equal to the member's *final average salary* multiplied by the sum of the member contribution rate and the employer contribution rate for the coverage plan applicable to the member; and

D. the purchase cost shall be paid to the association in one payment and the member shall retire the first day of the month following payment of the purchase cost. [Emphasis added.]

Under the applicable coverage plan, an employee's "final average salary" is defined as "one thirty-sixth of the greatest aggregate amount of salary paid a member for thirty-six consecutive months of credited service." *See* 1987 N.M.Laws, ch. 253, § 24. The use of the term "final average salary" resulted in a literal reading of Section 139 to permit an employee to purchase one year of service credit for one month's contributions.

PERB first became aware of this interpretation of Section 139 after the recodification became law, but prior to its effective date. To effectuate what it viewed as the legislative intent, PERB promulgated PERA Rule 1300.10 which went into effect the same day as Section 139. The Rule, according to PERB, was intended to clarify that service credit was to be purchased proportionately, and one year's service credit could be purchased with one year's contributions.

From July 1, 1987, to June 30, 1988, PERB calculated the purchase cost of service credit under Rule 1300.10. After purchasing service credit under Section 139, 415 employees retired from public employment. Two of these 415 employees were Petitioners Helman and Vigil. Both Helman and Vigil paid for the service credit under written protest, claiming that the cost should be 1/12th of what they were being charged. Petitioner West also filed a written protest although he did not purchase service credit allegedly because of the high purchase cost. On January 13,

1989, Petitioners filed a mandamus action seeking to compel PERB to refund 11/12ths of the cost of the service credit, and to allow Petitioner West to purchase the service credit at 1/12th of the cost. A class of 237 public employees who purchased service credit under Section 139 was certified by the court. The three named Petitioners and 128 of the 237 employees joined the instant action.

## II. CONCLUSIONS OF THE LOWER COURT IN THE PRESENT ACTION

The district court concluded that:

Section 139 as written is not ambiguous, absurd, or contradictory. Therefore current New Mexico case law prohibits the Court from interpreting, resorting to legislative history, or redrafting the language to conform it to reason or common sense, even though the evidence was that the drafters of the legislation did not intend the result required by the language.

The court also concluded that PERB's Rule 1300.10 was unlawful and exceeded PERB's authority because the Rule contradicted the plain statutory formula for calculating Petitioners' cost for service credit. Finally, although the district court did not make express findings as to laches or the failure to file a written protest, it did refuse PERB's requested findings on those issues which we treat as findings against that party. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988).

The district court granted a permanent writ of mandamus, entered a declaratory judgment, and ordered refunds of 11/12ths of the purchase cost to Petitioners and the class. We agree with the district court; therefore, we affirm.

## III. DISCUSSION

### A. *Whether This Court Can Interpret the Statute*

■ Petitioners contend that an unambiguous statute does not require, and indeed does not permit, judicial interpretation. This court has previously stated that "[s]tate statutes are to be given effect as written and, where they are free from am-

biguity, there is no room for construction; where the meaning of statutory language is plain, and words used by the legislature are free from ambiguity, there is no basis for interpreting the statute...." *Johnson v. Francke,* 105 N.M. 564, 566, 734 P.2d 804, 806 (Ct.App.1987) (citation omitted); *see also State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990) ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."); *Perea v. Baca,* 94 N.M. 624, 627, 614 P.2d 541, 544 (1980) ("If there is any doubt as to the meaning of the words, we are permitted to interpret by looking to legislative intent, but otherwise, we should not."). *See generally* 2A Norman J. Singer, *Statutes and Statutory Construction* § 45.02, at 5 (5th ed. 1992) ("A frequently encountered rule of statutory interpretation asserts that a statute, clear and unambiguous on its face, need not and cannot be interpreted by a court....").

While recognizing this rule, PERB forcefully argues that Section 139 is not only ambiguous but leads to absurd results and therefore requires judicial interpretation. To be sure, a court may indulge in statutory construction or interpretation if the statute in question is vague, *see, e.g., State v. Roswell Indep. Schs.,* 111 N.M. 495, 500, 806 P.2d 1085, 1090 (Ct.App.1991), and will construe a statute to avoid an absurd result. *See, e.g., id.* at 502, 806 P.2d at 1092. Although we conclude that the legislation is clear and unambiguous and therefore requires no interpretation, we address PERB's arguments only to explain why they do not require a different result. We first examine whether the statute in question is ambiguous.

### 1. *Ambiguity*

■ The determination of whether a statute is ambiguous is a question of law for the court to decide. *See New Mexico State Bd. of Educ. v. Board of Educ. of Alamogordo Pub. Sch. Dist.,* 95 N.M. 588, 590, 624 P.2d 530, 532 (1981). PERB

claims that Section 139 is ambiguous for three reasons.

First, PERB points out that, although Section 139 became effective on July 1, 1987, the beginning of the 76th fiscal year, the terms of the statute provide that a member may purchase service credit "during the seventy-fifth or seventy-sixth fiscal year." 1987 N.M.Laws, ch. 253, § 139. PERB claims that this language makes Section 139 "unclear, doubtful and materially ambiguous." We fail to see how the addition of the "seventy-fifth ... fiscal year" in any way affects the computation of costs to Petitioners. Inclusion of the phrase "seventy-fifth ... fiscal year" might arguably have some effect on purchases of credit in that year; however, that issue is not before the court. We are only concerned with employees who purchased or attempted to purchase service credit during the 76th fiscal year. Therefore, we reject this claim of ambiguity.

Second, PERB claims that the term "contribution rate" presents an ambiguity because it is based on statutory terminology which contains no temporal definition. We disagree. Moreover, PERB's own expert actuarial witness testified that Section 139 is a straightforward calculation and that there is no ambiguity in how the calculation should be done or as to the meaning of "contribution rate." Again we fail to see how this claim of ambiguity affects the computation of costs.

Third, PERB claims that the absence of a preamble creates ambiguity and doubt in the context of such a significant change in the legislation. We do not believe that the lack of a legislative preamble creates the requisite ambiguity or doubt in the correct calculation of the formula.

## 2. *Absurdity*

PERB relies on numerous New Mexico cases in support of its contention that this court should not interpret the Act literally if such interpretation produces an absurd result. In *State v. Nance*, 77 N.M. 39, 419 P.2d 242 (1966), *cert. denied*, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967), one of the cases relied on by PERB, our supreme court stated:

> Courts will not add words except where necessary to make the statute conform to the obvious intent of the legislature, or to prevent its being absurd. But where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others.

*Id.* at 46, 419 P.2d at 247 (citation omitted). PERB's primary argument is that literal interpretation of the statute is absurd because it allows certain members to purchase $100 worth of service credit for $1.46, paying 1/12th the amount that members were required to pay in the previous year.

While allowing certain members to purchase $100 worth of service credit for $1.46 may seem absurd, under PERB's preferred reading of the statute, a member would have to pay $17.57 for $100 worth of service credit, a result which may also appear ridiculous to some. It is undisputed that the purpose of allowing for purchase of service credit at reduced cost was to offer an incentive to higher salaried state employees to retire early, thereby avoiding massive layoffs and saving the state money. A determination of whether the formula adopted is absurd depends upon how badly the legislature wished to reduce the number of state employees and how much money it wished to save. Absent any legislative history within the Act itself, we have no basis for making that determination. Moreover, we note that other states have at times offered similar programs at little or no cost to members. For example, there is an exhibit in the record of Rhode Island's statute which provided similar credit at no cost to the members. Finally, it is not clear to what extent the program benefitted the state and protected it from the disruptive effects of threatened layoffs and diminishing revenues. We are unable to say, therefore, that a literal application of

the statute is clearly unreasonable and contrary to all logic.

### 3. *Legislative Intent*

■ "The fundamental principle of any attempt at statutory interpretation is to further the legislative intent and purposes underlying the statute. 'All rules of statutory construction are but aids in arriving at the true legislative intent.' " *Giant Indus. Arizona, Inc. v. Taxation & Revenue Dep't,* 110 N.M. 442, 445, 796 P.2d 1138, 1141 (Ct.App.1990) (quoting *Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 226, 668 P.2d 1101, 1103 (1983)) (citation omitted). Although the court must first look to the plain language of the statute, that language is not necessarily conclusive if there is clearly expressed legislative intent to the contrary. *See, e.g., Pyramid Lake Paiute Tribe of Indians v. United States Dep't of Navy,* 898 F.2d 1410, 1417 (9th Cir.1990); *Bradley v. Austin,* 841 F.2d 1288, 1293 (6th Cir.1988); *United States v. Stein,* 690 F.Supp. 767, 771 (E.D.Wis.1988) (only clearly expressed legislative intent to contrary will change result of an unambiguous statute).

We find no legislative intent within the Act expressly at odds with Section 139. In addition, we do not decide here whether contemporaneous documents possibly considered by legislators are admissible in New Mexico as evidence of legislative intent. First, we do not believe that the contemporaneous documents offered clearly indicate an express legislative intent contrary to the plain meaning of the statute. Second, because the consideration of such evidence would not affect our decision, we do not think it appropriate to decide the issue here. New Mexico law is clear that "legislative intent must be determined primarily by the *legislation itself." United States Brewers Ass'n, Inc. v. New Mexico Dep't of Alcoholic Beverage Control,* 100 N.M. 216, 219, 668 P.2d 1093, 1096 (1983), *appeal dismissed,* 465 U.S. 1093, 104 S.Ct. 1581, 80 L.Ed.2d 115 (1984). Indeed, "[t]estimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote." *Haynes v. Caporal,* 571 P.2d 430, 434 (Okla.1977), *quoted in Brewers,* 100 N.M. at 218, 668 P.2d at 1095. In light of this rule, there is very little evidence of legislative intent, and none "clearly expressed," to guide the court in this action. Thus, we are relegated to the language of the statute itself, and having examined it, we do not find it contrary to any clearly expressed legislative intent.

We note that we do not believe our holding to be inconsistent with the decision rendered by this court ir *D'Avignon v. Graham,* 113 N.M. 129, 131, 823 P.2d 929, 931 (Ct.App.1991), brought to our attention by PERB, where we held that:

[T]he cardinal rule of statutory construction is to determine legislative intent. True, legislative intent is first sought by reference to the plain meaning found in the language used by the legislature. However, both this court and the New Mexico Supreme Court have rejected formalistic and mechanistic interpretation of statutory language.

*Id.* at 131, 823 P.2d at 931 (citation omitted). The cases cited by the court in support of this proposition make clear that this rule is to be applied only where " 'the language is susceptible of two constructions,' " *Martinez v. Research Park, Inc.,* 75 N.M. 672, 677, 410 P.2d 200, 203 (1965), and not where the words are "free from ambiguity," *Security Escrow Corp. v. State Taxation & Revenue Dep't,* 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App.1988).

### B. *Whether PERA Rule 1300.10 Is Valid*

■ The determination of whether Rule 1300.10 is invalid as exceeding PERB's authority rests on the determination of whether the statute was ambiguous and in need of clarification. If there were ambiguities, Petitioners concede that PERB "would be authorized to issue a reasonable regulation clarifying them." An agency, however, cannot override, by regulation, a specific statute. *See, e.g., Jones v. Employment Servs. Div.,* 95 N.M. 97, 99, 619 P.2d 542, 544 (1980) ("If there is a conflict or inconsistency between statutes

and regulations promulgated by an agency, the language of the statutes shall prevail.") Having found no ambiguities, we agree with the district court that PERB had no authority to enact a rule contrary to the plain meaning of the statute.

### C. Whether Petitioners' Claims Are Barred by Laches

PERB argues that the district court erred by not concluding that Petitioners are barred from recovery by the doctrine of laches. Petitioners filed suit on January 13, 1989, eighteen months after Section 139 was enacted. We do not believe that PERB has met its burden of proving each element of laches and demonstrated to this court that the district court erred in implicitly determining that laches was inapplicable. *See* SCRA 1986, 12–213(A).

### D. Whether Recovery by Class Members Who Paid PERB Without Formal Protest Is Prohibited

■ PERB contends that any member who "voluntarily" made payments to obtain credited service should be prohibited from recovery in this action. PERB cites to New Mexico cases holding that taxes paid voluntarily cannot be refunded absent a specific statute permitting otherwise. *See Occidental Life of California v. State,* 92 N.M. 433, 433, 589 P.2d 673, 673 (1979). Petitioners, however, claim that the instant matter is unlike obtaining a refund of taxes paid which is governed by specific statutory requirements. *See Johnson v. Greiner,* 44 N.M. 230, 231–32, 101 P.2d 183, 184 (1940).

Petitioners also argue that the payments were made under duress because the class was informed that they must either purchase service credit under the terms of Rule 1300.10 before the end of the 76th fiscal year, or lose their statutory right to purchase such service credit. Under *Johnson,* Petitioners contend that the payment need not be made under protest if it is made under duress. *Id.* Finally, Petitioners argue that no formal protest was necessary because they were misinformed by PERB as to the application of Section 139,

and PERB, as managers of a pension fund, stood in a fiduciary relationship to Petitioners, as beneficiaries. *See* Stephen R. Bruce, *Pension Claims, Rights and Obligations* at 304 (1988).

Under the circumstance of this case, we agree with Petitioners. In light of PERB's fiduciary obligations, we do not believe the district court was required to find that Petitioners made the payments "voluntarily." *See, e.g., Sturdevant v. Mills,* 177 Mont. 137, 580 P.2d 923, 926 (1978) (voluntary payment is payment made without mistake of fact, fraud, coercion, or duress, and depends on facts of each case as indicating payor's intention to waive his legal rights). We therefore hold that the district court's implicit finding against PERB on the issue is supportable.

## IV. CONCLUSIONS

Our review of the transcript and record leaves little doubt that the representatives of PERB responsible for drafting the legislation in question clearly intended that Section 139 be a continuation of the previous year's buyout provision which based purchase cost on the member's annual salary. *See* NMSA 1978, § 10–11–14.3(D) (Cum. Supp.1986). The district court so found. PERB called four witnesses: (1) the deputy director of PERB; (2) an actuary who consults and advises PERB; (3) PERB's general counsel; and (4) an analyst for the legislative finance committee which reviews proposed legislature to determine, among other things, fiscal impact. PERB presented the proposed recodification to the legislature and its committees as having no fiscal impact. The documents introduced support this. Unfortunately, no one caught the apparent error that PERB acknowledges it made in the drafting process. While we have sympathy for PERB and can understand how such an error can occur, we must balance the temptation to "fix it" against clear law that requires that courts not rewrite legislation where its meaning is plain and unambiguous. Moreover, we are sensitive to the constitutional requirement of separation of powers. We believe concerns for consistency and deference to an-

other branch of government outweigh any temptation to rectify what might have been a mistake. We do this even though it may result in a possible windfall to Petitioners. As previously explained by our supreme court,

"A statute must be read and given effect as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration.... Courts must take the act as they find it and construe it according to the plain meaning of the language employed."

*Perea,* 94 N.M. at 627, 614 P.2d at 544 (quoting *Burch v. Foy,* 62 N.M. 219, 223, 308 P.2d 199, 202 (1957)).

It is clear to us that the district court viewed the case in the same manner, and therefore we affirm its decision.

IT IS SO ORDERED.

ALARID, C.J., and PICKARD, J., concur.