878 P.2d 1009

**David W. JEFFREY, Sr., Claimant–Appellant,**

v.

**HAYS PLUMBING & HEATING and Sedgwick–James of New Mexico, Inc., Respondents–Appellees.**

**No. 15181.**

Court of Appeals of New Mexico.

June 1, 1994.

Jeffrey C. Brown, Law Offices of Jeffrey C. Brown, Albuquerque, for claimant-appellant.

Carlos G. Martinez, Emily A. Franke, Butt, Thornton & Baehr, P.C., Albuquerque, for respondents-appellees.

*OPINION*

HARTZ, Judge.

David W. Jeffrey, Sr., (Claimant) was injured at work on May 18, 1992. Therefore, the amendments to the Workers' Compensation Act enacted in 1990 govern his entitlement to benefits. *See* NMSA 1978, § 52–1–48 (Repl.Pamp.1991); *Jojola v. Aetna Life & Casualty,* 109 N.M. 142, 144, 782 P.2d 395, 397 (Ct.App.1989). Under NMSA 1978, Section 52–1–26(C) and 52–1–26.1 (Repl. Pamp.1991) (Effective Jan. 1, 1991), a worker's permanent partial disability is determined by first calculating the worker's impairment, as defined by NMSA 1978, Section 52–1–24 (Repl.Pamp.1991) (Effective Jan. 1, 1991), and then adding a percentage based on an age modification, Section 52–1–26.2, an education modification, Section 52–1–26.3, and a physical capacity modification, Section 52–1–26.4. If, however, the worker returns to work after the date of maximum medical improvement at a wage equal to or greater than the worker's pre-injury wage, Section 52–1–26(D) provides that the partial disability rating is equal to the worker's impairment, without consideration of any modifications.

Hays Plumbing & Heating (Employer) offered Claimant a job at his pre-injury wage after Claimant had reached maximum medical improvement. Claimant rejected the offer in order to start his own business. The Workers' Compensation Judge ruled that Claimant's rejection was not reasonable and awarded Claimant a permanent partial disability rating equal to his ten-percent physical impairment rather than applying the age, education, and physical capacity modifications, which would have resulted in a disability rating of fifteen percent. Claimant appeals. We affirm.

The pertinent provisions of Section 52–1–26 are:

A. As a guide to the interpretation and application of this section, the policy and intent of this legislature is declared to be that every person who suffers a compensable injury with resulting permanent partial disability should be provided with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards.

B. As used in the Workers' Compensation Act [this article], "partial disability" means a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment.

C. Permanent partial disability shall be determined by calculating the worker's impairment as modified by his age, education and physical capacity, pursuant to Sections 52–1–26.1 through 52–1–26.4 NMSA 1978; provided that, regardless of the actual calculation of impairment as modified by the worker's age, education and physical capacity, the percentage of disability awarded shall not exceed ninety-nine percent.

D. If, on or after the date of maximum medical improvement, an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his impairment and

shall not be subject to the modifications calculated pursuant to Sections 52–1–26.1 through 52–1–26.4 NMSA 1978.

▮ Claimant argues that Subsection C entitles workers to the disability modifications without qualifications of any kind. Implicit in his argument is the contention that Subsection D does not apply in this case because it does not explicitly provide that the modifications are unavailable to a worker who receives a suitable job offer but refuses it. Claimant contrasts Section 52–1–26(D) with NMSA 1978, Section 52–1–25.1 (Repl. Pamp.1991) (Effective Jan. 1, 1991), which explicitly provides for the consequences of an offer of work prior to the time that the worker reaches maximum medical improvement, while temporary disability benefits are accruing. Section 52–1–25.1(B) states:

If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at the worker's pre-injury wage, the worker is not entitled to temporary total disability benefits.

Claimant concludes that an offer is all that is required to reduce benefits prior to the date of maximum medical improvement, whereas an actual job is necessary to reduce benefits after that date.

To reinforce his view that the 1990 amendments distinguish between offers of employment made prior to the date of maximum medical improvement and offers made after that date, Claimant points to two other statutory provisions. Section 52–1–25.1(C) states:

If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker is disabled and shall receive temporary total disability compensation benefits equal to sixty-six and two-thirds percent of the difference between the worker's pre-injury wage and his post-injury wage.

NMSA 1978, Section 52–1–50.1 (Repl. Pamp.1991) (Effective Jan. 1, 1991) states:

A. If an employer is hiring, the employer shall offer to rehire the employer's worker who has stopped working due to an injury for which the worker has received, or is due to receive, benefits under the Workers' Compensation Act [this article] and who applies for his pre-injury job or modified job similar to the pre-injury job, subject to the following conditions:

(1) the worker's treating health care provider certifies that the worker is fit to carry out the pre-injury job or modified work similar to the pre-injury job without significant risk of reinjury; and

(2) the employer has the pre-injury job or modified work available.

B. If an employer is hiring, that employer shall offer to rehire a worker who applies for any job that pays less than the pre-injury job and who has stopped working due to an injury for which he has received, or is due, benefits under the Workers' Compensation Act, provided that the worker is qualified for the job and provided that the worker's treating health care provider certifies that the worker is fit to carry out the job offered. *Compensation benefits of a worker rehired prior to maximum medical improvement and pursuant to this subsection shall be reduced as provided in Section 52–1–25.1 NMSA 1978.*

C. As used in this section, "rehire" includes putting the injured worker back to active work, regardless of whether he was carried on the employer's payroll during the period of his inability to work.

D. The exclusive remedy for a violation of the section shall be a fine as specified in Section 52–1–61 NMSA 1978. (Emphasis added.)

What these two provisions actually show, however, is that the 1990 amendments were not drafted with the precision suggested by Claimant. The drafters were simply not focusing on the distinction upon which Claimant relies. For example, the final sentence of Section 52–1–50.1(B) adjusts compensation benefits prior to maximum medical improvement for a worker who has been "rehired." The explicit terms of the sentence apply only when the worker is actually employed by the

employer. Yet, Section 52–1–25.1 applies so long as the worker is offered the position, even if the worker does not accept and become rehired. We are confident that the final sentence of Section 52–1–50.1(B) was not intended to repeal or limit Section 52–1–25.1. The use of the verb "rehire" in the former section and "offer" in the latter suggests that the drafters were not paying a great deal of attention to the difference between offering the job and hiring the worker.

Claimant also points out that Section 52–1–50.1 makes no reference to an adjustment of benefits under Section 52–1–26(D) for workers hired after the date of maximum medical improvement. It is not clear what significance he finds in that omission. Surely Claimant is not suggesting that Section 52–1–26(D) does not apply when the worker is rehired by the original employer. The fact that Section 52–1–50.1 cross-references Section 52–1–25.1 but not Section 52–1–26 again illustrates only that the drafters were not compulsive about detail.

One can make a similar comment about Section 52–1–25.1(C). The provision applies if the employer *offers* work but the reduction in disability benefits is based on the difference in the worker's "pre-injury wage and his post-injury wage." The use of the term "post-injury wage" rather than "post-injury wage offer" is simply another example of language that is not 100% precise, although it may reflect the drafters' assumption that the worker would accept the offer or their view that the worker is deemed to have accepted the offer.

The above observations counsel us not to infer too much from the appearance of the word "offer" in Section 52–1–25.1 and its absence in Section 52–1–26(D). Our decision in *Barela v. Midcon of New Mexico*, 109 N.M. 360, 362–64, 785 P.2d 271, 273–75 (Ct. App.), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1989) is instructive. In that case we construed the 1986 amendments to the Workers' Compensation Act, commonly known as the Interim Act. The Interim Act defined partial disability in terms of a permanent physical impairment "as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides to the evaluation of permanent impairment, copyrighted 1984, 1977 or 1971, or comparable publications by the American medical association." Section 52–1–25 (Cum.Supp.1986). The definition of permanent total disability, in contrast, spoke only of "permanent physical impairment," without any reference to AMA guides. Section 52–1–24 (Cum.Supp.1986). We did not infer that the absence of a reference to the AMA guides in the definition of permanent total disability meant that the guides need not be considered in determining permanent total disability. Rather, we incorporated into the definition of permanent total disability the requirement in the definition of permanent partial disability that impairment be based on the AMA guides. Given the statutory relationship between determinations of partial disability and total disability under the Interim Act, a contrary construction of the statute would have given a worker a perverse incentive not to produce evidence regarding the AMA guides. We said that such a construction would "lead to results that we doubt were intended by the legislature." *Barela*, 109 N.M. at 364, 785 P.2d at 275.

Of course, we must take great care not to substitute our personal preferences for the intentions of the legislature. The legislature may well not have shared any views we have of good policy. Relying on this Court's decision in *State ex rel. Helman v. Gallegos*, 114 N.M. 414, 416–18, 839 P.2d 624, 626–28 (Ct.App.1992), *rev'd*, 117 N.M. 346, 871 P.2d 1352 (1994), Claimant emphasizes our duty to interpret clear statutory language as it was written, so long as the result is not absurd. But the perils of reading statutes literally are illustrated by the Supreme Court's reversal of our decision in *Helman*. We should not attribute to the legislature an undue precision in drafting and thereby frustrate legislative intent when we construe a statute.

Having rejected Claimant's approach to construing Section 52–1–26, we now undertake our own effort at interpreting the statute. We begin with the clear requirement of Section 52–1–26(D): if a worker returns to work on or after the date of maximum medical improvement and earns a wage at least as

great as the worker's pre-injury wage, then the age, education, and physical capacity modifications are not considered in computing the percentage of partial disability. The question then becomes whether a worker can evade this provision by voluntary unemployment or underemployment. We hold that permitting such an evasion would be contrary to the Workers' Compensation Act.

This is not a new concept in New Mexico law. As we stated in *Feese v. U.S. West Service Link,* 113 N.M. 92, 94, 823 P.2d 334, 336 (Ct.App.1991), "In New Mexico, disability benefits are denied if a claimant, through voluntary conduct unconnected with his injury, takes himself out of the labor market. *Aranda v. Mississippi Chem. Corp.,* 93 N.M. 412, 414, 600 P.2d 1202, 1204 (Ct.App.), *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979)." *Aranda* quoted with approval *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d 264, 266–67 (Alaska 1974), which stated, "Total disability benefits have been denied when a partially disabled claimant has made no bona fide effort to obtain suitable work when such work is available." *Aranda,* 93 N.M. at 414, 600 P.2d at 1204. In a similar vein, under NMSA 1978, Section 52–1–51(I) (Repl.Pamp.1991) (Effective Jan. 1, 1991), the Workers' Compensation Judge may reduce or suspend disability benefits if a worker "refuses to submit to such medical or surgical treatment as is reasonably essential to promote his recovery." Recently we held that a worker cannot postpone indefinitely a determination of maximum medical improvement—which would terminate benefits for temporary total disability—by declining surgery. *Rael v. Wal–Mart Stores,* 117 N.M. 237, 871 P.2d 1 (Ct.App.), *cert. denied,* 117 N.M. 215, 870 P.2d 753 (1994); *see Gonzales v. Lovington Pub. Sch.,* 109 N.M. 365, 785 P.2d 276 (Ct.App.1989) (worker cannot prolong receipt of benefits for permanent total disability by refusing vocational rehabilitation), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1990).

The same principle also finds favor outside the workers' compensation context. For example, for purposes of our child support guidelines, "income" means "actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed." NMSA 1978, Section 40–4–11.-1(C)(1) (Cum.Supp.1993). An underemployed parent must pay child support at the same level as if employed to full capacity.

Thus, we read Section 52–1–26 in light of the general acceptance of the proposition that one should not be permitted to benefit by refusing to take reasonable steps to help oneself. Indeed, the legislature instructs us to do so when it states in Section 52–1–26(A) that the section should be interpreted and applied in light of "the policy and intent of this legislature ... that every person who suffers a compensable injury with resulting permanent partial disability should be provided with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards." We would violate the policy of encouraging employment and independence from compensation benefits if we interpreted Section 52–1–26 to permit a worker to escape a reduction in benefits by voluntarily remaining unemployed or underemployed.

Nevertheless, it does not follow that the provisions of Section 52–1–26(D) are triggered whenever the employer offers a job at a wage equal to or greater than the worker's pre-injury wage. Rejection of the employer's offer does not necessarily mean that the worker is voluntarily unemployed or underemployed. There may be sound, appropriate reasons for the worker not to take the job. For example, the timing of the offer may be highly relevant. If by the time the employer makes the offer the employee has found another job, it may be reasonable for the worker to keep that job even though the pay is less than the employer's offer. Perhaps the lower-paying job provides greater prospects for the future or greater job security. *Compare Bower v. Whitehall Leather Co.,* 412 Mich. 172, 312 N.W.2d 640 (1981) (employer's offer not considered in computing benefits; worker had taken out-of-state job) *with Arouni v. Kelleher Constr.,* 426 N.W.2d 860 (Minn.1988) (offer considered; worker took inappropriate lower-paying job). We hold that an offer rejected by the employee triggers the adjustment provided by Section 52–

1–26(D) only if the rejection was unreasonable.

In the present case the Judge determined that Claimant's rejection of Employer's job offer was unreasonable. On appeal Claimant has not challenged that determination, nor has he even set forth facts from which we could adequately review it. Therefore, we affirm the decision to award disability benefits based solely on Claimant's physical impairment.

**IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.