784 P.2d 1049

**Eloy VARELA, Claimant–Appellant,**

v.

**ARIZONA PUBLIC SERVICE,
Respondent–Appellee.**

No. 11259.

Court of Appeals of New Mexico.

Nov. 30, 1989.

Certiorari Denied Dec. 21, 1989 and
Jan. 4, 1990.

Dennis F. Armijo, Farmington, for claimant-appellant.

Michael P. Watkins, Gallagher, Casados & Mann, P.C., Albuquerque, for respondent-appellee.

OPINION

APODACA, Judge.

The opinion filed on November 14, 1989 is withdrawn on the court's own motion and this opinion is filed in its place. Claimant Eloy Varela (worker) appeals from the hearing officer's order awarding benefits to worker of 15% permanent partial disability. Since the injury occurred in June 1986, this case is governed by the transient provisions of the Workers' Compensation Act, NMSA 1973, Sections 52-1-1 to -68 (Orig. Pamp. & Cum.Supp.1986) (the Interim Act). The hearing officer's award was based on the provisions of Section 52-1-25. Worker contends, however, that he was entitled to an award of total disability benefits under Section 52-1-24(A) instead. In *Barela v. Midcon of New Mexico, Inc.*, 109 N.M. 360, 785 P.2d 271 (Ct.App.1989), this court concluded that an award of benefits for partial disability under Section 52-1-25 must be considered in determining whether a worker is wholly unable to earn comparable wages and thus is totally disabled under Section 52-1-24. This appeal presents us with yet another aspect of the relationship between the two separate definitions of permanent total disability and permanent partial disability. Specifically, did a finding by the hearing officer of permanent partial disability under Section 52-1-25 preclude a separate finding of permanent total disability under Section 52-1-24(A)?

We hold that the hearing officer is not so precluded but additionally is required to consider whether the evidence can also sustain a finding of permanent total disability, irrespective of a finding of partial disability. We thus remand for entry of findings and conclusions on worker's entitlement to total disability benefits.

The Interim Act defines permanent total disability as follows:

a *permanent physical impairment* to a workman resulting by reason of an accidental injury arising out of and in the course of employment whereby a workman is wholly unable to earn comparable wages or salary. In determining whether a workman is able to earn comparable wages and salary, the hearing officer shall consider the benefits the worker is entitled to receive under Section 52-1-43 NMSA 1978. If the benefits to which the workman is entitled under Section 52-1-43 * * * and the wage he is able to earn after the date of maximum medical improvement * * * is comparable to the wage the worker was earning when he was injured, he shall be deemed to be able to earn comparable wages[.] [Emphasis added.]

§ 52-1-24(A). This provision thus describes the various factors the hearing officer must evaluate in determining whether a worker is able to earn comparable wages or salary.

Partial disability, on the other hand, is defined as follows:

a *permanent physical impairment* to a workman resulting from an accidental injury arising out of and in the course of employment, whereby a workman has any anatomic or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding as presented in the American medical association's guides[.] [Emphasis added.]

§ 52-1-25. We first note that both sections initially describe the respective disabilities under each as a "permanent physical impairment." In *Barela,* we concluded that an award of benefits received under Section 52-1-43 included those for partial disability as defined in Section 52-1-25 for purposes of calculating comparable wages.

The hearing officer entered findings that: (1) worker suffered an accidental injury arising out of and in the course of his employment; (2) the disability was causally connected to this injury; (3) worker suffered a permanent physical impairment; and (4) worker had reached maximum medi-

cal improvement. Neither party disputes these findings. The hearing officer, however, made no findings on worker's ability to earn a comparable wage.

Worker argues he presented uncontradicted evidence of his anticipated wages, demonstrating he was unable to earn a comparable wage or salary under Section 52-1-24(A) and that the hearing officer erred in refusing to make these findings. In so arguing, worker relies on the testimony of a vocational rehabilitation expert, who stated that worker was unable to return to his job as a welder due to his physical limitations and that worker had the aptitude, skills and desire for a career in accounting. The expert also testified that worker's anticipated salary as an accountant, after vocational rehabilitation, would be approximately $1800 per month, based on a national survey. Worker's weekly benefits for 15% partial disability would be approximately $180. At the time of his injury, he was earning $2793 per month and, at the time he left work, he was earning $2992 per month. The nature of the expert's testimony thus appears to encompass the kind of factors the hearing officer may decide to consider under Section 52-1-24(A) in determining whether worker was able to earn a comparable wage.

The difficulty in this case, however, arose because the hearing officer's findings clearly support the award of partial disability under Section 52-1-25. Our task in this appeal, therefore, is to attempt to reconcile what may at first glance be perceived as an incongruity in the two sections of the Interim Act. Specifically, was the hearing officer permitted to select between the two sections to determine what benefits worker was entitled to, or was he required to consider any evidence on comparable wages, in spite of his having determined that the evidence also supported a finding of a partial disability? In its answer brief, employer argues that we have before us only a substantial evidence question and that the evidence clearly supports the hearing officer's award of 15% permanent partial disability benefits under Section 52-1-25. Employer suggests affirmance is thus

mandated. It contends further the hearing officer was not required to make findings on comparable wages under Section 32-1-24(A) because he had initially found that only partial disability under Section 52-1-25 existed. We disagree.

We believe the definitions of partial and total disability under the Interim Act are not mutually exclusive. Instead, we hold worker may satisfy all of the requirements under both definitions, yet, be entitled only to benefits under the section providing the most in benefits. These provisions cannot be read or applied in isolation, but must be construed together. *See Garcia v. Schneider, Inc.*, 105 N.M. 234, 731 P.2d 377 (Ct.App.1986). The provisions of the Interim Act are to be construed liberally in favor of a worker. *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980). There being no indication to the contrary in the Interim Act, we apply the case law applicable under the prior statutory provisions. *Cf.* NMSA 1978, § 52-5-1 (Repl.Pamp. 1987).

A brief discussion of the history of various workers' compensation schemes may be helpful in construing the two sections of the Interim Act in question. Historically, most states have adopted compensation schemes based on considerations of whether the worker was to be compensated for: (1) a pure wage loss; (2) a pure physical impairment; or (3) an impairment of earning capacity, a combination of (1) and (2). *See generally* 2 A. Larson, *The Law of Workmen's Compensation* § 57.14 (1989). According to Larson, there are three competing schools of thought or theories on which most workers' compensation schemes are based. Larson describes them as the "wage loss theory," "earning capacity theory," and the "physical impairment theory." *Id.* Wage loss schemes were the basis of all early compensation acts, which sought only to compensate an injured worker for actual wages lost. *Id.* This wage loss scheme gradually gave way with the introduction of "scheduled injuries" principles, which had evolved in turn from the physical impairment theory. This sec-

ond theory examined loss of physical functioning rather than earning power. *See id.* The physical impairment theory recognized at least one flaw in the wage loss theory: a worker who lost a finger, a hand, or was disfigured might still be able to return to his full wages and earning capacity as before, yet not be entitled to an award. Thus, even though a worker received nothing to compensate him for a physical loss of disfigurement, he nevertheless lost his common law right to sue the employer for his injuries. *Id.*

The impairment of earning capacity theory attempts to reconcile the expanded "scheduled injuries"/physical impairment theory with the wage loss theory. *Id.* This theory relates compensable physical impairment ultimately to employability. Larson suggests that the earning capacity theory holds to the original concept of compensating loss of earning power, but recognizes that to get a true calculation of loss, one cannot always make a arithmetical comparison of earnings before and after. In the impairment of earning capacity theory, new elements are factored in to get a true calculation of *loss* to the worker. *Id.*

A study of the evolving law in New Mexico under the various workers' compensation acts enacted by the legislature, in light of the discussion in Larson of the three competing theories, reveals that our various acts have, at one time or another, embraced all three schools of thought. We believe that some of the difficulty in interpreting the Interim Act's definitions of disability may arise from the fact that the legislature, in enacting the two sections, adopted two of the competing schools of thought. Under Section 52-1-25, it is clear that partial disability is measured purely by the loss of physical function; loss of wages or earning power absolutely plays no part in the determination. In contrast, the legislature, in requiring a determination of a worker's ability to earn a comparable wage under Section 52-1-24(A), apparently applied the "earning capacity theory" of compensation. We believe each section, then, represents two different schemes of compensation, based on two distinct theories. *See generally* Larson,

*supra.* Read in this light, it becomes immediately apparent that the two sections state different theories of recovery and that it is possible for a worker to prove entitlement to benefits under both sections. Consequently, this appeal raises the additional question of the hearing officer's obligation to enter findings and conclusions when a worker seeks to recover under a theory of total disability under the Interim Act and the employer seeks to limit the worker's recovery under a theory of partial disability.

■ Based on the liberal construction we have given the provisions of the Interim Act, we conclude the hearing officer was not entitled to elect between granting partial or total disability benefits where the evidence would support both. Implicit in *Barela*'s holding, we believe, was the requirement that the hearing officer must first make a determination of permanent partial disability before making a determination of permanent total disability. We further conclude that if the worker satisfied all the requirements for both partial and total disability, he is entitled to an award under the section providing the most benefits.

The record does not indicate the hearing officer considered whether worker was entitled to total disability benefits after it was determined worker was entitled to partial disability benefits. However, the record discloses that, although worker had requested findings on comparable wage, the hearing officer did not make such findings.

The legal effect of a refusal to make a finding is a finding against the party requesting it. *H.T. Coker Constr. Co. v. Whitfield Transp., Inc.,* 85 N.M. 802, 518 P.2d 782 (Ct.App.1974). Nevertheless, a finding of fact induced by an error of law can not stand. *See Walker v. L.G. Everist, Inc.,* 102 N.M. 783, 701 P.2d 382 (Ct.App. 1985). We therefore reverse and remand for: (1) the entry of findings and conclusions on the merits of worker's entitlement to total disability benefits under Section 52–1–24(A) based on the evidence already presented at the formal hearing; and (2) a reconsideration of the appropriate amount of attorney fees in light of the hearing officer's determination on total disability. In the event the hearing officer determines worker is entitled to total disability benefits, worker is hereby awarded the sum of $3,000 for attorney fees on appeal. This award shall be paid by employer and is in addition to any attorney fees awarded by the hearing officer for services rendered below. *See* § 52–1–54(E). Worker is allowed costs on appeal.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.