924 P.2d 1371

Donna TRUJILLO, Worker–Appellant,

v.

SONIC DRIVE–IN/MERRITT and United States Fidelity & Guaranty Company, Employer/Insurer–Appellees.

No. 17041.

Court of Appeals of New Mexico.

Aug. 16, 1996.

Peter V. Culbert, Jones, Snead, Wertheim, Wentworth & Jaramillo, P.A., Santa Fe, for Worker–Appellant.

Robert Bruce Collins, Donald C. Clifford, Nancy Augustus, Albuquerque, for Employer/Insurer–Appellees.

## OPINION

APODACA, Chief Judge.

**1.** Worker appeals from an order of the workers' compensation judge (the judge). The order established the employer's and insurer's (referred to collectively as Employer) right to reimbursement for compensation benefits and advanced litigation expenses from sums obtained by Worker in settlement of a third-party tort claim. Worker argues the following issues on appeal: (1) the amount by which Employer was relieved from paying future benefits should be added to the value of its reimbursement claim for benefits already paid in determining Employer's share of attorney fees and costs; (2) the judge lacked jurisdiction to order that Work- er reimburse litigation expenses advanced by Employer; (3) the judge erred in not finding that Employer's negligence was a proximate cause of Worker's injury; and (4) the judge erred in finding that Worker was made financially whole by the third-party recovery and in terminating her right to future benefits.

**2.** This appeal presents an issue of first impression—whether calculation of an employer's share of the litigation costs and fees incurred by a worker in obtaining a settlement with a third-party tortfeasor should include the employer's relief from future liability. We answer this question in the affirmative and therefore reverse and remand for additional findings and considerations. We affirm the inclusion of the litigation expenses advanced by Employer to the extent they are subject to reimbursement, but we correct the amount advanced and we direct that, on remand, the expenses be apportioned together with the sums expended by Worker. Because disposition of Worker's third issue (whether Employer's negligence proximately caused Worker's injuries) may have an impact on remand, we address that issue and we affirm. Finally, we affirm the judge's rejection of Worker's proposed finding that she was not made financially whole by the third-party recovery.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**3.** On July 22, 1993, Worker disassembled Employer's soft ice cream machine in order to clean it. She was attempting to assemble the machine when it unexpectedly activated and caught her arm in its rotating blades. As a result of Worker's extensive injuries, her arm was amputated below the elbow.

**4.** Employer paid Worker $50,581 in indemnity and medical benefits. Worker then settled a third-party tort claim against the machine's manufacturer for $1,000,000, netting $616,595 after paying attorney fees, taxes, and other litigation-related expenses.

Pursuant to NMSA 1978, § 52–5–17 (Repl. Pamp.1991) (effective Jan. 1, 1991), Employer filed a claim for reimbursement of benefits paid and litigation expenses advanced. Employer did not contest the fairness of the third-party settlement. Its reimbursement claim was the subject of an evidentiary hearing held on August 29, 1995.

5. The judge determined that Employer should be reimbursed for past benefits paid, less 38.4% of that amount for Employer's proportional share of the litigation costs and fees incurred by Worker,[1] and reimbursed for a full $18,800 in advanced litigation expenses. The judge rejected Worker's tendered findings on (1) the value of the future benefits that, Worker argued, Employer was relieved from paying and (2) the formula for computing that reimbursement. The judge also determined that Worker was made financially whole by the third-party recovery and that Employer had no further obligations in this respect. Finally, the judge rejected Worker's proposed finding that Employer's alleged negligence was a proximate cause of Worker's injuries. *See generally Varela v. Arizona Pub. Serv.*, 109 N.M. 306, 309, 784 P.2d 1049, 1052 (Ct.App.1989) ("The legal effect of a refusal to make a finding is a finding against the party requesting it."), *certs. denied*, 109 N.M. 262, 784 P.2d 1005 (1989 & 1990).

## II. DISCUSSION

### A. Future Benefits

6. To demonstrate the economic benefit to Employer as a result of being released from further obligations, Worker attempted to establish the value of remaining workers' compensation income benefits and future medical expenses. The value of the remaining income benefits was not in dispute; an employee of Employer testified that the value, not discounted to present dollars, was

$21,062.99. The value of future medical expenses, however, was contested.

7. Worker's physician testified that Worker would need to be refitted with functional and cosmetic prostheses every three to five years for the rest of her life. The combined expense for the two prostheses in 1993 was $12,440. Worker testified she would probably want to replace the two prostheses every three years because she was already experiencing loss of fit and comfort less than two years after the first set was purchased. One of Worker's exhibits, a letter from her attorney dated May 4, 1994, stated that Worker's life expectancy "taken from the U.S. Life Table" was 54.58 years. Dr. Dillman, an economist, computed a present value of $37,552 for expenses of $1000 per year. He opined that the present value of $12,440, spent each three years, was $155,-728. Worker requested findings of fact consistent with Dr. Dillman's opinion.

8. Worker requested a finding that she was reasonably certain to incur prosthetic adjustment expenses of $180 per year of her fifty-five-year life expectancy and that these expenses had a present value of approximately $10,000. Worker also requested a finding that the present value of spending $144 a year on prosthetic socks over the remaining fifty-five years of her life was $8000.

9. Employer did not request any findings and conclusions. Nor is there any indication that Employer directly challenged the evidence presented below on future medical expenses and present value. Employer's single argument on appeal regarding the refusal of Worker's requested findings on the value of future medical expenses is that the judge could have rationally rejected Dr. Dillman's affidavit based on Worker's testimony that her actual medical expenses for the past year totaled only $180.

### 1. Should Future Benefits Be Considered?

10. Worker urges that New Mexico join those jurisdictions whose courts have

---

1. Worker incurred $354,166.66 for attorney fees and taxes and $29,237.92 in litigation related expenses. The total of those two amounts, divided by the $1,000,000 third-party settlement, results in a cost percentage of approximately 38.4%. We approved this formula in *Transport Indemnity Co. v. Garcia*, 89 N.M. 342, 343, 552 P.2d 473, 474 (Ct.App.), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976).

concluded that an employer's share of the fees and costs involved in a worker's third-party recovery are determined by including in the calculation the employer's relief from total potential liability rather than including only past benefits actually paid by the employer. *See generally* 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 74.32(a)(4), n. 18 (1996 & 1996 Supp.) (citing cases). Employer, on the other hand, argues that *Gutierrez v. City of Albuquerque,* 121 N.M. 172, 909 P.2d 732 (Ct.App.), *cert. granted,* 120 N.M. 828, 907 P.2d 1009 (1995), requires reimbursement from Worker's tort recovery only for the full amount of benefits already paid.

11. To determine the extent of Employer's responsibility, we turn first to *Transport Indemnity,* the inceptive New Mexico case on the relationship between an employer's right of reimbursement and the expense of obtaining a third-party settlement. In that case, as here, the employer's insurer paid compensation benefits before the worker recovered funds from a third party. The trial court assessed the employer a proportionate share of the worker's expense of recovery and subtracted that share from the employer's claim for reimbursement of compensation benefits paid. *Transport Indemnity* considered the question of whether the expenses of a third-party action are to be prorated between an employer and an employee. We undertook our effort in the absence of any statutory provisions or guidance, noting that "fundamental fairness must be the guidelines." *Id.* at 345, 552 P.2d at 476. We affirmed the trial court's decision to charge the employer with its proportionate share of the costs.

12. Although the workers' compensation reimbursement statute has undergone several amendments since we examined it in *Transport Indemnity,* the present version is substantively similar, and it remains free of any directions regarding the apportionment of expenses. *See* § 52–5–17. We thus decline to assume that the legislature had nullified our decision in *Transport Indemnity. See Granito v. Grace,* 56 N.M. 652, 657, 248 P.2d 210, 213 (1952) (legislature's substantial re-enactment of statute after judicial interpretation construed as adoption of court's interpretation).

13. Employer implies that *Gutierrez* overruled *Transport Indemnity.* We reject this suggestion. In *Gutierrez,* the workers' compensation judge calculated that the worker had been compensated by a third-party tort settlement for only 38% of her total damages, and he limited the employer's right to reimbursement for amounts it had paid and would pay to that same percentage. We reversed the limitation and instructed the workers' compensation judge to award the employer "a pro tanto reimbursement for sums it expended on benefits paid to [the worker] in the past and to credit the [employer] for any future benefits to be paid to the extent that there [were] funds available from the third-party tort settlement." *Gutierrez,* 121 N.M. at 180, 909 P.2d at 740. In that case, we were not faced with the question of whether the employer was required to bear a proportionate share of the cost of the third-party recovery. In fact, the employer accepted that obligation; it sought reimbursement for benefits paid out and a credit for future benefits, "less [its] proportionate share of attorney's fees and costs." *Id.* at 183, 909 P.2d at 743 (Bosson, J., concurring in part and dissenting in part). As a result, *Gutierrez* cannot be read to support Employer's broad claim that it is not required to share *any* of the costs of obtaining the third-party settlement.

14. Here, consistent with *Transport Indemnity,* the judge charged Employer with costs as against benefits already paid. It was the judge's apparent unwillingness to consider apportioning costs concerning relief from future liability, however, that takes this case beyond *Transport Indemnity.* This issue has been the subject of decisions in a number of jurisdictions, most of which have statutes providing for apportionment of recovery expenses but not referring to relief from future liability. *See* 2A Larson, *supra,* § 74.32(a)(4). The clear majority of courts have decided this issue for workers on equity

and fairness grounds and have stated that apportionment is not properly limited only to compensation benefits already paid. *See id.* at n. 18 (citing cases); *cf. Transport Indem.,* 89 N.M. at 344–45, 552 P.2d at 475–76 ("Generally, the courts have been left the task of determining where the equities lie when the statutory provision fails to provide guidelines.").

15. Employer argues that consideration of the value of its relief from future liability is unnecessary to achieve equity because the elimination of its obligation to pay benefits in the future is equally balanced by the elimination of Worker's statutory obligation to reimburse Employer for payment of future benefits. We disagree. The cancellation of offsetting obligations is only part of the picture. Under the scenario advocated by Employer, Employer obtains substantial economic relief as a result of recovery efforts underwritten by Worker while Worker is penalized for settling the case early.

16. Regardless of whether the third-party recovery is obtained before or after compensation benefits are paid, it is unfair to allow an employer to avoid contributing to the costs of worker-financed legal services that enhance its economic situation. *See Sheris v. Travelers Ins. Co.,* 491 F.2d 603, 606 (4th Cir.) ("no rational distinction between the benefit an employer enjoys from being reimbursed for compensation payments already made and the benefit of being released from the obligation to make future compensation payments"), *cert. denied,* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974); *Lemery v. Buffalo Airways, Inc.,* 14 Kan.App.2d 301,

789 P.2d 1176, 1181 ("To allow [an employer] to pay only a small portion of the total attorney fees and litigation expenses will dissuade future injured workers from pursuing their claims against third-party tortfeasors."), *review denied* (June 5, 1990); *Graham v. Industrial Comm'n,* 26 Utah 2d 424, 491 P.2d 223, 224 (1971) ("no reason why there should be any difference in the final result whether the third party pays before or after an award is made"), *opinion modified by* 27 Utah 2d 279, 495 P.2d 806 (1972). To hold otherwise could result in uncertainties, inequities, and possible schemes of delay to obtain maximum attorney fees. *See Prettyman v. Utah State Dep't of Fin.,* 27 Utah 2d 333, 496 P.2d 89, 91 (1972).

17. We believe that the holdings in these cases are based on sound principles. We therefore reverse and remand for a determination of Employer's proportionate share of attorney fees and costs, taking into consideration both compensation benefits already paid and relief from future workers' compensation liability.

## 2. How Should The Amount Of Employer's Relief From Future Liability Be Calculated?

18. In apparent acknowledgement of the fact that a dollar today is more valuable than a dollar payable in the future, *see, e.g.,* NMSA 1978, § 55–2A–103(1)(u) (Repl. Pamp.1993), Worker acquiesces in the use of a discounted value for Employer's future liability. We approve of this approach. The appropriate formula is as follows:

$$\frac{(1)\ \text{past payments made and}\ (2)\ \text{relief from future liability, reduced to present value}}{\text{amount of tort recovery}} \times \text{attorney fees and costs} = \text{insurer's proportionate share of fees and costs}$$

19. There is no dispute concerning the value of past payments made or the amount of the third-party settlement. Employer paid Worker $50,581 in indemnity and medical benefits, and Worker settled her claim against the manufacturer of the machine for $1,000,000.

20. The present value of Employer's relief from future liability, however, was not conceded by Employer. We are aware that Employer introduced no evidence on the matter. Nevertheless, Worker bears the burden of proof on the issue. *See, e.g., Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 358, 838 P.2d 971, 975 (1992) ("The burden lies

with the worker to show that a third-party release ... has not discharged fully the employer's liability to pay benefits."). We believe that the decision as to what additional evidence and argument, if any, is appropriate is best left to the discretion of the judge on remand. *See State ex rel. New Mexico State Highway & Transp. Dep't v. Baca*, 120 N.M. 1, 8–9, 896 P.2d 1148, 1155–56 (1995) (record unclear and district court did not make findings sufficient to sustain decision appealed from); *Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 457, 827 P.2d 838, 845 (Ct.App.1991) (justice required remand where uncertain whether workers' compensation judge used proper legal standard in making determination), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (1992).

## B. Reimbursement Of Litigation Expenses Advanced By Employer

21. Employer advanced several litigation costs to Worker for use in Worker's third-party tort claim: $496 to an insurance investigative firm, and $14,144 for the services of an electrical engineer. Additionally, for a net cost of $4000, Insurer purchased a replacement ice cream machine for Employer so that the machine that injured Worker could be used as a trial exhibit.

### 1. Are Such Expenses Reimbursable?

■ 22. The costs incurred by Worker related to the third-party recovery are not disputed; they include $354,166.66 for attorney fees and taxes and $29,237.92 in other litigation-related expenses. The parties disagree, however, whether certain litigation expenses incurred by Employer are reimbursable. Specifically, Worker argues that Employer is not entitled to any reimbursement because (1) the advanced expenses are not compensation or benefits and Section 52–5–17(B) provides for reimbursement only to the extent of payment of compensation or benefits and (2) the parties had no agreement with respect to reimbursement of the advanced expenses. For the reasons noted below, we believe that reimbursement is appropriate despite the absence of an agreement.

23. There is no express statutory right to reimbursement of litigation expenses advanced by an employer to support a worker's claim against a third party. However, Section 52–5–17(B), in providing that funds obtained by a worker from a third party are available to reimburse payments of compensation benefits, does not limit the availability of those funds for that single reimbursement purpose. Because our workers' compensation statute is silent on the matter, fundamental fairness again must be our guide. *See Transport Indem.*, 89 N.M. at 345, 552 P.2d at 476. For the same reasons that make it fair to charge Employer with its proportionate share of litigation expenses that Worker paid, we hold that reimbursement by Worker of a proportionate share of the expenses advanced by Employer is also appropriate. *See id.; see also Apex Lines, Inc. v. Lopez*, 112 N.M. 309, 311–12, 815 P.2d 162, 164–65 (Ct.App.1991) (discussing recovery of voluntary overpayments that exceed future benefits owed a worker). We next determine which of Employer's expenditures should be included.

■ 24. Worker acknowledges that Employer's payments of $496 to an investigative firm and $14,144 for the services of an electrical engineer are proper litigation expenses. She argues, however, that Employer's net cost of $4000 for the machine that injured Worker is not a true expense because the payment was a transfer within a single entity. We disagree. It is clear to us that Employer's insurer is a second entity completely independent and unrelated to Employer in the latter's status as the owner of the defective ice cream machine. Worker's reliance on WCA Rule 92.3.23(A) (Oct.1992) (an employer and its insurer are considered one party for purposes of rule providing each party a single challenge to a workers' compensation judge) does not persuade us otherwise. We thus hold that the actual litigation expenses advanced by Employer total $18,-640 ($496 + $14,144 + $4000).

### 2. What Calculations Should Be Performed Upon Remand?

25. Returning to the formula for calculation of Employer's proportionate share of litigation expenses and costs, it is apparent that several variables have now been quantified and that several remain:

$$\frac{\$50{,}581 + \text{the present value of } (\$21{,}062.99 \text{ in remaining workers' compensation income benefits} + \text{future medicals})}{\$1{,}000{,}000} \times \begin{pmatrix} \$354{,}166.66 \\ + 29{,}237.92 \\ + 18{,}640.00 \end{pmatrix} = \text{Employer's proportionate share of fees and costs}$$

Stated otherwise, Employer's proportionate share of fees and costs equals 40.2% of the sum of $50,581 and the present value of both $21,062.99 in remaining workers' compensation income benefits and future medicals. The resulting number, representing Employer's proportionate share of fees and costs, must be compared to the $69,221 ($50,581 + $18,640) Employer has expended to date. If Employer's proportionate share of fees and costs is greater than $69,221, it must pay Worker the difference; if it is lower, Worker must reimburse the excess.

### C. Rejection Of Worker's Findings Regarding Employer's Comparative Fault

26. Worker does not dispute that the machine's manufacturer was negligent for providing an unreasonably dangerous machine that carried inadequate warning notices. In an effort to diminish Employer's right to reimbursement, however, Worker sought to establish that Employer's negligence was a proximate cause of her injury. *See generally* NMSA 1978, § 52–1–10.1 (Repl.Pamp.1991) (employer's right to reimbursement diminished by its percentage of fault in proximately causing worker's injury).

27. Worker introduced the following evidence on this question: (1) Worker had no training to work on the ice cream machine; (2) the store manager knew that the machine had been malfunctioning, but she did not warn Worker; (3) the manager was unable to locate the owner's manual describing how to safely clean the machine; (4) the manager directed Worker to clean the machine during peak business hours, with the result that the manager and Worker were constantly interrupted to wait on customers; (5) before Worker began to clean the machine, the manager complied with a warning sign on the machine directing that all switches be turned off before cleaning, but the manager did not tell Worker to unplug the machine; (6) an untrained mechanic made improper repairs to the machine that may have caused a short that started the machine spontaneously; and (7) after the accident, the manager said it was all her fault.

28. Section 52–1–10.1 provides for a reduction in an employer's right to reimbursement by the percentage of its fault in proximately causing a worker's injury. Thus, Worker's claim that the judge erred in failing to find that Employer's negligence was a proximate cause of her injury would be of significance in computing whether Employer is entitled to reimbursement or must pay Worker and, if so, how much. For the reasons that follow, however, we affirm the judge's rejection of Worker's claim under Section 52–1–10.1.

29. First, we are not persuaded that, under the doctrine of strict products liability, Employer would be considered the supplier of the ice cream machine, thus making it strictly liable for injuries caused by a defect in the machine. *See* NMRA 1996, 13–1406 (supplier in business of putting a product on the market potentially liable for harm resulting from condition of product or manner of its use); *Aalco Mfg. Co. v. City of Española,* 95 N.M. 66, 67, 618 P.2d 1230, 1231 (1980) (goal of doctrine of strict products liability is

to protect injured consumer). Worker cites *Trujillo v. Berry*, 106 N.M. 86, 738 P.2d 1331 (Ct.App.1987), for the proposition that a car-wash owner has been held strictly liable when machinery installed in a car wash caused injuries to a customer, regardless of whether the machinery's manufacturer might also be liable. This proposition, however, is not entirely accurate. In that case the plaintiff was a consumer, and strict liability would only have been imposed if the car-wash defendant was later determined by the trial court to be a supplier. This determination was not made in *Trujillo*.

■ 30. Second, Worker's claim that Employer breached its duty to use ordinary care, *see* NMRA 1996, 13–1402 (duty of the supplier of a product) and –1420 (res ipsa loquitur), required her to prove that Employer failed to use ordinary care. We are not persuaded that the evidence compels a finding in Worker's favor on these questions; we believe a fact finder could have reasonably determined that Worker had not shown that the exercise of reasonable care under the circumstances required more than shutting off the machine before cleaning. *See Bober v. New Mexico State Fair*, 111 N.M. 644, 650, 808 P.2d 614, 620 (1991) (fact finder's responsibility to determine whether a defendant breached duty owed plaintiff); *see also Estate of Mitchum v. Triple S Trucking*, 113 N.M. 85, 90–91, 823 P.2d 327, 332–33 (Ct. App.) (standard of review; appellate court's function in reviewing decision of workers' compensation judge is not to determine whether evidence would support contrary finding), *cert. denied*, 113 N.M. 16, 820 P.2d 1330 (1991). Worker's evidence was similarly non-conclusive on the issue of proximate cause. *See, e.g., Harless v. Ewing*, 80 N.M. 149, 151, 452 P.2d 483, 485 (Ct.App.1969) ("[Proximate cause] becomes a question of law only when facts regarding causation are undisputed and all reasonable inferences therefrom are plain, consistent and uncontradictory.").

## D. Rejection Of Worker's Finding That She Was Not Made Financially Whole

31. Worker introduced evidence to the effect that the $1,000,000 third-party settlement paid only 40% of her damages. Employer did not dispute any particular item of the alleged damages. Worker contends that the judge erred in finding that Worker was made financially whole by the third-party recovery and thus concluding that she had no right to future benefits. Worker acknowledges, however, that this contention is answered adversely to her by *Gutierrez*, 121 N.M. at 178, 909 P.2d at 738 (where fairness of the amount of third-party settlement was not contested, improper to make an equitable allocation of the settlement between employer and worker). We will not revisit *Gutierrez*.

## III. CONCLUSION

32. We affirm the judge's rejection of Worker's requested findings that Employer's negligence was a proximate cause of Worker's injury and that Worker was not made financially whole by the third-party recovery. We reverse and remand for a determination of Employer's proportionate share of attorney fees and costs, including $18,640 in litigation expenses advanced by Employer, taking into consideration the amount of relief from future workers' compensation liability as well as compensation benefits already paid. The judge shall enter an amended judgment consistent with this opinion, after first giving the parties an opportunity to present such additional evidence and arguments that may be appropriate. The judge shall include in the amended judgment an award of attorney fees on appeal to Worker in an amount deemed proper.

33. **IT IS SO ORDERED.**

ALARID and HARTZ, JJ., concur.